JK/sls

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
v.                                   )
                                     )
BRUCE HOLLANDER,                     )
                Defendant.           )
_____)

NIGHT BOX
FILED

OCT 15 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / F.T.L.

## GOVERNMENT'S TRIAL BRIEF

    1.    The United States hereby submits this Trial Brief to the court by and through its undersigned Assistant United States Attorney.  This brief is not offered as a comprehensive statement of the Government's case, rather, its purpose is to provide an outline of the government's evidence, the elements of the offenses and to address anticipated legal issues that may arise during the course of trial.  This memorandum is intended to serve as a guide to the court, and it is not in the nature of a Bill of Particulars that will fix and bind the government to a set theory of proof.



## INDEX TO GOVERNMENT'S TRIAL BRIEF

Topic                                                           Page No.

I.    OUTLINE OF FACTS......................................3

II.   SUMMARY OF INDICTED CHARGES...........................6

III.  TITLE 18, UNITED STATES CODE, §371(CONSPIRACY)........9

IV.   FALSE STATEMENTS TO HUD, 18 USC § 1010...............13

V.    MAIL FRAUD, 18 USC §1341.............................14

VI.   WIRE FRAUD, 18 USC §1343.............................15

VII.  AIDING AND ABETTING, 18 USC §2.......................16

VIII. VICARIOUS LIABILITY..................................17

IX.   MONEY LAUNDERING, 18 USC §1956.......................18

X.    ANTICIPATED LEGAL ISSUES.............................24

      A.   Out of Court Declarations

           (1)   Admissions...............................24

           (2)   Co-conspirator Statements................24

      B.   Authenticity of Documents

           (1)   Official Documents.......................27

           (2)   Private or Unofficial Documents..........27

      C.   Use of Summary Witness and Summary Charts and

           Exhibits.......................................28

      D.   Evidence as to Conduct of a Witness,

           Rule 608(b)F.R.E...............................31

I.    <u>**Outline of the Facts**</u>

2.    This case presents the prosecution of Bruce Hollander, who, along with his coconspirators, through the use of fraudulent documents and other fraudulent information, induced lending institutions to lend money totaling approximately $11,000,000 in approximately 120 separate transactions to purchase residential real estate.

3.    In or about 1996 Mark Cohen went into partnership with Eric Silverman.  They would solicit unsophisticated, first time home buyers to purchase homes.  They would show the buyers various homes. When the buyers were ready to purchase a home, Cohen and Silverman, through Silverman's company, American Redevelopment Corporation (ARC), would enter into a contract to buy the house and then enter into a second contract to sell the house to the first-time home buyer for approximately $15,000 more than ARC purchased it.  The closing for both of the sales would take place on the same date.  These type of transactions are known as "flip" transactions, where an investor buys property and immediately "flips" or sells the property for an immediate profit.  Many lending institutions do not like to fund "flip" transactions.  In order to lawfully execute a "flip" transaction the lending institution must be apprized of both the purchase and the immediate resale. Cohen and Silverman with the assistance of

3

the defendant unlawfully "flipped" the properties as they
knowingly hid the initial purchase of the properties.

    4.    The defendant, who is a lawyer and was the owner of a
title company, was the title agent for approximately 40 of the
closings on these "flip" transactions for Cohen and Silverman.
Generally, in these "flip" transactions the defendant would
require that Silverman's company, ARC, sell the property first,
then later that day or the next day buy the property.  This was
to ensure that there were funds from the lender to buy the
property.  However, in doing so, the defendant allowed ARC to
sell property it never owned.  As the title agent, a few days
prior to closing, the defendant would execute a title commitment
policy, also called a fund commitment form, which the defendant
would sign stating who owns the property and what steps need to
be taken to clear title.  For each of the closings for Cohen and
Silverman the defendant would direct his employees to falsely
prepare the title commitment form stating that ARC owned the
property and would fail to mention the purchase of the property
by ARC.  The defendant would sign these erroneous title
commitment forms and they would be faxed to the mortgage broker
who would then fax the erroneous title commitment to the ultimate
lender.  Witnesses will testify that the defendant knowingly
executed these false title commitments, because he said that
otherwise the lenders would not make the loans.  These title

4

commitments were a requirement before the loan could be closed. After receiving these title commitments the lender would send their closing instructions.

5.    A HUD insured loan for the purchase of a person's primary residence requires that a minimum cash investment be made by the borrower from his or her own funds of at least 3% of the purchase price to be used for closing costs and the down payment. HUD requires the minimum cash investment in order to ensure that the borrower has an actual financial stake in the property, and will be more likely to maintain the mortgage commitment and less likely to fall into default.  If the borrower did not have the funds personally, those funds could be provided to the borrower by certain persons and entities as a gift.  However, the seller was not permitted to provide the funds to the borrower.  In this case Silverman would unlawfully provide the funds to the buyer, and then be reimbursed at closing by the defendant from the proceeds of the sale.   In some instances there would be a number of closings on the same or successive days.  Silverman would need funds for the gift checks, so the defendant would issue a check at closing to Silverman in the amount of the gift funds knowing that Silverman would further promote the scheme by immediately cashing the check and use the cash to purchase a gift check for the next closing.

5

II.    <u>Summary of Indicted Charges</u>

Count 1 of the indictment charges that from in or about December 1996 through at least September 1999 defendant Hollander and his coconspirators conspired to commit mail and wire fraud, and to make false statements to HUD, in violation of 18 USC §371.

Count 2 charges that on or about December 17, 1997, defendant Hollander caused wire communication to be utilized for the purpose of executing and furthering a scheme and artifice to defraud and for obtaining money by false representations with respect to the loan of Leguiet Moise, in violation of 18 USC §§1343 and 2.

Count 3 charges that on or about October 17, 1997, defendant Hollander caused wire communication to be utilized for the purpose of executing and furthering a scheme and artifice to defraud and for obtaining money by false representations with respect to the loan of Emerita Rodriguez, in violation of 18 USC §§1343 and 2.

Count 4 charges that on or about September 11, 1997, defendant Hollander caused wire communication to be utilized for the purpose of executing and furthering a scheme and artifice to defraud and for obtaining money by false representations with respect to the loan of Anibal Georges, in violation of 18 USC §§1343 and 2.

Count 5 charges that on or about November 19, 1997,

6

defendant Hollander caused wire communication to be utilized for the purpose of executing and furthering a scheme and artifice to defraud and for obtaining money by false representations with respect to the loan of Willie Mae Mike, in violation of 18 USC §1343 and 2.

Count 6 charges that on or about November 25, 1997, defendant Hollander caused wire communication to be utilized for the purpose of executing and furthering a scheme and artifice to defraud and for obtaining money by false representations with respect to the loan of Janet Carswell, in violation of 18 USC §§1343 and 2.

Count 7 charges that on or about June 6, 1997, defendant Hollander knowingly caused false statements to be made with respect to the loan of Luz Ortiz with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 8 charges that on or about June 26, 1997, defendant Hollander knowingly caused false statements to be made with respect to the loan of Jean Dimanche with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 9 charges that on or about May 22, 1997, defendant

7

Hollander knowingly caused false statements to be made with respect to the loan of Betye with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 10 charges that on or about September 11, 1997, defendant Hollander knowingly caused false statements to be made with respect to the loan of Urejoma with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 11 charges that on or about September 25, 1997, defendant Hollander knowingly caused false statements to be made with respect to the loan of Marie Francois with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 12 charges that on or about January 7, 1998, defendant Hollander knowingly caused false statements to be made with respect to the loan of Jean Ducatel with the intent that such loan be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD, in violation of 18 USC §§1010 and 2.

Count 13 of the indictment charges that from in or around

July 1997 to in or around January 1998 defendant Hollander did conspire with others to promote the unlawful activities of mail fraud and wire fraud, by conducting financial transactions with the proceeds of the unlawful activities, which financial transactions affected interstate commerce, in violation of 18 USC §§1956(h) and 1956(a)(1)(A)(i).

### III. TITLE 18 UNITED STATES CODE, SECTION 371(CONSPIRACY)

A. Elements of Conspiracy

The essential elements of a conspiracy are an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose. The essence of the crime of conspiracy is the agreement and not the commission of the objective substantive crime. United States v. Rabinowich, 238 U.S. 78, 87-89 (1915). Conspiring to commit a crime is an offense separate and distinct from the crime which may be the object of the conspiracy. Pereira v. United States, 347 U.S. 1, 11 (1959)

B. Proof of Unlawful Agreement

The Supreme Court has held that the existence of a criminal conspiracy need not be proven by direct evidence but rather the common plan maybe inferred from circumstantial evidence. Glasser v. United States, 315 U.S. 60,80 (1942). In order to prove a defendant guilty of conspiring to commit an unlawful act, the government must demonstrate that an agreement existed between two

or more persons to commit a crime and that the defendant
knowingly and voluntarily joined or participated in helping to
achieve its objective.  US v. Cross, 928 F.2d 1030, 1042 (11th
Cir.); United States v. Vera, 701 F.2d 1349, 1357 (11th Cir.
1983).  The  existence of "an agreement may be proved by
circumstantial evidence, such as inferences from the conduct of
the alleged participants or from circumstantial evidence of a
scheme." United States v. Tamargo, 672 F.2d 887, 889 (11th Cir.),
cert. denied. 459 U.S. 864 (1982) (quoting United States v.
Spradlen, 662 F.2d 724,727 (11th Cir. 1981). As the Eleventh
Circuit repeatedly has recognized,"[t]here is 'rarely any direct
evidence of an agreement to join a criminal conspiracy, and thus
the defendant's assent can be inferred from acts which furthered
the conspiracy's purpose."' United States v. Miller, 693 F.2d
1051, 1053 (11th Cir. 1982), cert.denied, 461 U.S. 909, (quoting
United States v. Middlebrooks, 618 F.2d 273, 278 (5th Cir.),
cert.denied, 449 U.S. 984 (1980); accord United States v.
Malatesta, 590 F.2d 1379, 1381 (5th Cir.), cert. denied,440 U.S.
962, cert. denied, 444 U.S. 846 (1979) ("a common scheme and
plan may be inferred from a 'development and a collocation of
circumstances"') (quoting Glasser v. United States, 315 U.S. 60,
80 (1942). The absence of direct proof of the agreement generally
results from the secretiveness and complexity of modern-day
conspiracies. See Blumenthal v. United States, 332 U.S. 539, 557

10

(1947).

C. Timing the Conspiracy

A conspirator need not join a conspiracy at its inception. Each person joining a conspiracy is taken to adopt, and is bound by, the prior acts and statements made in furtherance of the common objective. Langel v. United States, 451 F.2d 957, 961 (8th Cir. 1991). Each conspirator need not know the identity or the number of all his co-conspirators. United States v. Middlebrooks, 618 F.2d at 278. Slight additional evidence is necessary to connect a particular defendant with it. United v. Marrapese, 486 F.2d 918 (2d Cir. 1973), cert. denied, 415 U.S. 994 (1974); Langel v. United States, 451 F.2d at 961-62.

D. Required Participation in the Conspiracy

The government need not prove that the defendant was present or was an active participant or had the knowledge or means to carry out the criminal activity. US v. Perez, 922 F.2d 782 (11th Cir.). A defendant may be found guilty of conspiracy even if he did not join it until after its inception, and even if he played a minor role in the total scheme. US v. Gonzalez, 940 F.2d 1413, 1426 (11th Cir. 1991). Further, the fact that the defendant's acts appeared not to be illegal when viewed in isolation does not bar conviction. "An act innocent in nature and of no danger to the victim or society suffices if it furthers the criminal venture." US v. La Chance, 817 F. 2d 1491, 1494 (11th Cir. 1987).

11

E. <u>Termination from the Conspiracy</u>

Once a conspiracy is established involving a defendant it is considered to continue unless and until the defendant proves by showing affirmative acts, that the conspiracy was terminated or that he withdrew from it. <u>US v. Roper</u>, 874 F.2d 782, 787 (11th Cir. 1989). The burden is on the defendant to prove that he has withdrawn from the conspiracy. <u>United States v Wentland</u>, 582 F.2d 1022, 1025 - 26 (5th Cir. 1978), <u>cert</u>. <u>denied</u>, 440 U.S. 976 (1979). Once having joined a conspiracy and not having withdrawn, the conspirator cannot insulate himself from the acts of his coconspirators. <u>US V. Bobo</u>, 586 F.2d 355, 370 n.20 (5th Cir. 1978), <u>cert</u>. <u>denied</u>, 440 U.S. 976 (1979). This was illustrated in <u>US v. Beale</u>, 921 F.2d 1412, 1423 (11th Cir. 1991) where a defendant was involved in a conspiracy to rob banks. He had a dispute with a co-conspirator and did not participate in a robbery, but continued to receive a share of proceeds and continued to communicate with members of the conspiracy. The nature of the robberies were the same and there was an overlap in participants. The defendant was held to be a continuing past of the conspiracy.

F. <u>Vicarious Liability</u>

Once it is shown that a conspiracy existed and that the defendant participated in it, acts of coconspirators done in furtherance of the conspiracy are attributable to the defendant and he becomes equally liable for them. <u>US v. Pearson</u>, 508 F.2d 595

(5th Cir.), <u>cert</u>.<u>denied</u>, 423 U.S. 845 (1975). The defendant is criminally responsible for such acts notwithstanding the defendant's non-participation or lack of knowledge thereof. <u>US v. Schlei</u>, 122 F.3d 944, 967 (11th Cir. 1997).

## IV.  Title 18, US Code, Section (1010) (False Statements to HUD)

The essence of a violation of 18 USC §1010 is the uttering of false documents with the intent to influence HUD (formerly FHA). <u>Bins v. US</u>, 331 F.2d 390 (5th Cir.1964). The false statements can be, but need not be, made directly to HUD. Instead, the false statements may be made to a lending institution who the defendant knew was submitting the loan to HUD for insurance or some other purpose. See <u>United States v. Miller</u>, 962 F. 2d 739 (7th Cir. 1992). The defendant need not be the borrower or even make the false statements, provided that the defendant aid and abet in obtaining the fraudulently obtained HUD insured loan. See <u>United States v. Tremont</u>, 429 F. 2d 1166 (1st Cir. 1970); <u>United States v. Hawkins</u>, 295 F. 2d 837 (6th Cir. 1961). The crime of making false statements to HUD is one of subjective knowledge and intent and requires no defrauding of HUD or reliance on the part of its officials. <u>US v. Henninger</u>, 350 F.2d 849, 850 (10th Cir. 1965). See also <u>US v. Farrington</u>, 389 F.2d 357 (6th Cir. 1968) (financial loss to the government was not an element of offense of making

false statements to FHA).  Further, the Eleventh Circuit in US v. De Castro, 113 F.3d 176 (11th Cir. 1997), held that materiality is not an element of making a false statement to HUD, in violation of 18 USC §1010.

### V.  Title 18, US Code, Section 1341 (Mail Fraud)

In order to obtain a conviction for mail fraud, the government must prove that the defendant: (1) intentionally participated in a scheme or artifice to defraud; and (2) used the US mails to carry out that scheme and artifice. US v. Suba, 132 F.2d 662 (11th Cir. 1998).  Intent to defraud means intent to deceive, and ignorance of the law is no defense.  US v. Paradies, 98 F.3d 1266 (11th Cir. 1996).  A conviction for mail fraud requires only that the fraudulent scheme existed, not that the scheme succeeded.  US v. Bailey, 123 F.3d 1381 (11th Cir. 1997).  Thus, proof of pecuniary loss is not essential to a mail fraud conviction.  US v. Lea, 618 F.2d 426, 429 n.3 (7th Cir 1980).  Further, it is not necessary to show that reliance of the victim was induced by the misrepresentations of the defendant, nor is it necessary to show that the victim was misled in order to support a conviction of mail fraud.  United States v. Goldberg, 455 F. 2d 479 (9th Cir. 1972). Materiality is an element of mail fraud. Neder v. US, 119 S.Ct. 1827 (1999).

Mailing is a required element of the crime of mail fraud.  To

satisfy the mailing requirement, however, the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in the plot. US v. Mills, 138 F.3d 928 (11th Cir. 1998). Even a routine or innocent mailing can supply the mailing element of the mail fraud offense. Moreover, the mailing may be accomplished by some innocent party- it is not necessary that the defendant, or some other culpable party personally use the mail. US v. Downs, 870 F.2d 613 (11th Cir. 1989). For mail fraud offenses committed on or after September 13, 1994, the use of the mail includes mailings using any private or commercial interstate carrier. See 18 USC § 1341.

### VI.  Title 18, US Code, Section 1343 (Wire Fraud)

In order to establish a violation of 18 USC § 1343 the government must prove that a defendant: (1) intentionally participated in a scheme to defraud; and (2) used wire communications to further the scheme. US v. Ross, 131 F.3d 970 (11th Cir. 1997). It is not necessary that the wire communication actually further the scheme, only that it was intended to help further the scheme. US v. Hammock, 598 F.2d 1008, 1010 (5th Cir. 1979). It is not necessary that there be false representations or promises, all that is necessary is a scheme to deceive. Henderson v. US, 425 F.2d 134, 145 n.6 (5th Cir. 1970). In addition, Section

15

1343 does not require that the scheme be successful, or that the victim suffer a loss.  US v. Patterson, 528 F.2d 1037 (5th Cir. 1976); US v. Gross, 416 F.2d 1205, 1209 - 10 (8th Cir. 1969). Materiality is an element of wire fraud.  Neder v. US, 119 S.Ct. 1827 (1999).

Use of the wires is an element of the crime of wire fraud. The use of the wires need not be a central or essential element of the fraudulent scheme.  US v. Brennan, 629 F.Supp 283 (ED NY 1986) aff'd 798 F.2d 581.  The contents of the actual wiring need not contain any false information. US v. Ross, 131 F.3d 970, 985 (11th Cir. 1997) (similar to "innocent" mailings in mail fraud).  The defendant need not send the wires, and the wires need not be sent to the victim.  US v. Johnson, 700 F.2d 163 (5th Cir. 1983). Instead, it is only required that the defendant do an act with knowledge that the use of the interstate wires will follow in the ordinary course of business or where such use can be reasonably foreseen, even though not actually intended, then he causes the interstate wires to be used.  Pereira v. US, 347 U.S. 1, 8-9 (1954).

## VII.  Title 18 US Code, Section 2 (Aiding and Abetting)

18 USC §2(a) provides that a person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal.  18 USC § 2(b) provides that whoever

16

willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

A showing that the defendant associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed, will support a conviction for aiding and abetting.  US v. Delgado, 56 F.3d 1357 (11th Cir. 1995).  The government need not prove that the defendant was present at the scene when the crime occurred or that he had knowledge of the particular means employed to carry out the criminal activity.  US v. Perez, 922 F.2d 782 (11th Cir. 1991).  The purpose of 18 USC §2 is to permit a person operating from behind the scenes to be convicted even though that person is not expressly prohibited by the substantive statute from engaging in the acts made criminal by Congress.  US v. Walser, 3 F.3d 380, 388 (11th Cir. 1993).

## VIII.  Vicarious Liability for Substantive Offenses (Pinkerton Liability)

Each party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course of and in the furtherance of the conspiracy, notwithstanding each party's non-participation in the offenses or lack of knowledge thereof.   Pinkerton v US, 328 U.S.

640 (1946); US v. Ross, 131 F.3d 970, 984 (11th Cir. 1997). Acts in furtherance of the conspiracy are those acts which were within the scope of or were a reasonably foreseeable consequence of the unlawful agreement. US v. Decker, 543 F.2d 1102, 1104, (5th Cir. 1976). Pinkerton liability arises either where the substantive crime was one of the objects of the conspiracy or where the substantive crime facilitated the implementation of the goal of the conspiracy.

### IX. TITLE 18, UNITED STATES CODE SECTION, 1956 (MONEY LAUNDERING)

**A. Title 18, United States Code, Section 1956(a)(1)(A)(i)- Money Laundering.**

In this case the defendant is charged with conspiracy to violate Title 18 United States Code Section 1956(a)(1)(A)(i).

(Laundering of Monetary Instruments)

1. Section 1956(a)(1)

a. Financial transaction

To prove a violation of § 1956(a)(1), the government must prove:

1) a financial transaction,

2) knowledge that the property involved in the financial transaction represents the proceeds of some form of unlawful activity, and

3) property that is, in fact, the proceeds of a specified unlawful activity.

As defined in section 1956(c)(3), the term "transaction" is very broad. It includes:

a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.

This definition is broad and includes virtually any exchange of property between private parties and almost any operation involving a financial institution. Each transaction may be charged as a separate count and multiple transactions need not be aggregated and charged as one count. In <u>United States v. Alvarez-Morena</u>, 874 F.2d 1402 (11th Cir. 1989), the Eleventh Circuit held that charging each transaction as a separate count was not multiplicious.

b. <u>Knowing that the property represents some form of Unlawful Activity.</u>

In order to prove the knowledge element in any subsection 1956(a)(1) prosecution, the government must establish with direct or circumstantial proof, that the defendant actually or constructively knew that the property involved in the financial

19

transaction was the proceeds of some state, federal, or felonious activity.

Subsection (c)(1) contains a definition of the knowledge element. It states:

the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7).

The definition specifically disassociates the knowledge element from the proceeds element. The defendant need not know that property was in fact the proceeds of specified unlawful activity. Rather it is sufficient if he knows the property to be the proceeds of some form of felonious conduct under state, federal or foreign law.

Where the defendant was the perpetrator of the underlying offense and thus is accused of laundering the proceeds of his own criminal activity, proof of the knowledge is straightforward. See United States v. Jackson, 935 F.2d 832 (7th Cir. 1991) (the defendant is a drug dealer with access to lots of cash, and cash is being deposited into the defendant's account, the jury may conclude that the defendant knew the cash was the proceeds of his drug trafficking activity).

c. Proceeds of specified unlawful activity.

The third element of §1956(a)(1) offenses requires proof that

the property involved in the transaction was, in fact, the
"proceeds of specified unlawful activity" as defined in 18 U.S.C.
§1956(c)(7).  In other words, while the government must only
establish that a defendant knew that the property was derived from
some form of felonious activity under state, federal, or foreign
law, the government must prove that the proceeds were, in fact, the
fruits of a "specified unlawful activity," which was a completed
crime.

     In United States v. Gregg, 179 F.3d 1312 (11th Cir. 1999), the
court held that a bank fraud offense was completed when the
defendant accomplished the transfer of the funds into his personal
account through the use of fraud.  His subsequent withdrawal of the
money from that account could support a money laundering
prosecution.

     Frequently defendants will commingle the proceeds of specified
unlawful activity with legally derived funds.  In United States v.
Cancelliere, 69 F.3d 1116 (11th Cir. 1995), the defendant committed
the offense of bank fraud and deposited money into a bank account
which also had legitimately derived funds.  The defendant then
wrote two checks out of the account which gave rise to two money
laundering counts in the indictment.  He contended that the
government failed to prove that the funds against which the two
checks were written involved tainted money, as opposed to the
legitimate money in the account.  The Eleventh Circuit held that

21

the statute allows for a conviction where the funds involved in the transaction are derived from a commingled account of which only a part comes from "specified unlawful activity". See also, United States v. Suba, 132 F.3d 662 (11th Cir. 1998). As noted in United States v. Ward, 197 F.3d 1076 (11th Cir. 2000) Congress did not intend for participants in unlawful activities to escape conviction for money laundering simply by commingling funds derived from both specified unlawful activities and other activities, and once proceeds became tainted they could not become untainted. Because money is fungible, the government must prove only that the tainted proceeds were commingled with other funds in order to convict under the money laundering statute. Further, there is no requirement that a "substantial portion" of the funds have been derived from the specified unlawful activity. See Ward, supra, 197 F.3d at 1083.

    2. Subsection 1956(a)(1)(A)

    Subsection 1956(a)(1)(A)(i) provides that is in unlawful for anyone:

        (a) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-

            (A) with the intent to promote the carrying on of specified unlawful activity.

    Promotional money laundering, 18 USC §1956 (a)(1)(A)(i), prohibits the reinvestment of illegal proceeds into the unlawful

scheme as opposed to concealment money laundering under 18 USC §1956 (a)(1)(B)(i), which prohibits measures used to conceal or disguise illegal proceeds. <u>United States v. Green</u>, 225 F.3d 955, 958 (8th Cir. 2000). In <u>United States v. Hildebrand</u>, 152 F.3d 756, 762 (8th Cir. 1998) checks written to pay office supplies, secretarial services, office staff wages, and commissions from an account where fraudulent funds were deposited was sufficient to convict the defendants of reinvestment money laundering. See also, <u>United States v. Ross</u>, 210 F.3d 916, 920 (8th Cir. 2000) (promotional money laundering where checks written to partially fund loan, pay rent, and to maintain appearance of validity). The practice of "plowing back" proceeds of an illegal activity to promote that activity constitutes promotional money laundering. <u>United States v. Febus</u>, 218 F.3d 784, 789 (7th Cir. 2000) (payment of money to employees and winners constitutes promotion of illegal lottery). See also, <u>United States v. Conley</u>, 37 F.3d 970, 979 n.12 (3rd Cir. 1994) (evidence of defendant's use of illegal gambling proceeds to pay vendors to service illegal poker machine constituted promotional money laundering) and <u>United States v. Cole</u>, 988 F.2d 681, 684 (7th Cir. 1993) (the defendant's payment of "interest" to defraud investors promoted the fraudulent investment scheme).

**X.   Anticipated Legal Issues**

A.   Out-Of-Court Declarations

During the course of the trial, the Government shall present evidence of out-of-court declarations of the defendant as well as those of unindicted coconspirators. Some of those statements will be related by live witnesses and documents. The following is an attempt to set out some of the general principles that govern admissibility of such statements.

1. Admissions

Some of the statements the Government will introduce only incriminate the defendant-declarant, they are simply admissions and governed by Rule 801(d)(2) of the Federal Rules of Evidence (FRE). United States v. Hamilton, 689 F.2d 1262, 1271 (6th Cir. 1982), cert. denied, 459 U.S. 1117 (1983).

2. Co-conspirator's Statements

Some of the statements the Government shall introduce were not made by defendant but will incriminate him; these will be offered as coconspirators statements. Rule 801(d)(2)(E), FRE, excludes from the definition of hearsay --

a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The evidentiary predicates for admissibility of a coconspirator's statements are: (1) proof that a conspiracy existed; (2) proof that the defendant and declarant were members of

24

the conspiracy, and (3) proof that the statements were made in the course and in furtherance of the conspiracy. <u>Bourjaily v. United States</u>, 483 U.S.171 (1987).

The admissibility of coconspirator's statements is to be determined by the trial judge, who may consider any relevant evidence, including the hearsay statements sought to be admitted. The court need only determine that the conspiracy existed and the defendant participated in it. Independent inquiry into the reliability of the statement is no longer required. <u>Bourjaily v. United States</u>, 483 U.S. at 182-183; <u>United States v. Cerone</u>, 830 F.2d. 938, 848 (8th Cir. 1987).

The language "during the course and in furtherance of the conspiracy" has been afforded a broad construction under Rule 801(d)(2)(E). <u>United States v. Massa</u>, 740 F.2d 629, 638 (8th Cir 1984), <u>cert</u>. <u>denied</u>, 471 U.S. 1115 (1985). Accordingly, the "in furtherance" requirement is satisfied where the statement in question furthers in any way the common objectives of the conspiracy. <u>United States v. Handy</u>, 668 F.2d at 408; <u>United States v. Layton</u>, 720 F.2d 548, 555-56 (9th Cir. 1983).

In addition, the term "conspiracy" as used in Rule 801(d)(2)(E) does not necessarily mean that the defendant and declarant must both be shown by independent evidence to be members of the conspiracy alleged in the indictment. "'[C]onspiracy as an evidentiary concept, embodied in Rule 801(d)(2)(E), and

25

'conspiracy' as a concept of substantive criminal law are not coterminous." United States v. Kendall, 665 F.2d 126, 130 (7th Cir.), cert. denied, 455 U.S. 1021 (1979). The evidentiary principle is often referred to as a "joint venture" or "concert of action" exception to the hearsay rule. Id.; see United States v. Postal, 589 F.2d 862, 886 n. 41 (5th Cir.), 444 U.S. 832 (1979); United States v. Richardson, 477 F.2d 1280, 1282-83 (8th Cir. 1973).

The general rule requires only that the conspiracy introduced into evidence by the Government be 'factually intertwined' with the offense for which the defendant is being tried. United States v. Kendall, 665 F.2d at 131. See also United States v. Kendall, 593 F.2d 182,184 (2d Cir.1979), cert. denied, 444 U.S. 847 (1979). Pursuant to this principle, a defendant is bound by the statement of a declarant who is, by that statement, furthering an illicit association with the defendant even absent a formal conspiracy charge. United States v. Snider, 720 F.2d 985, 992 (8th Cir. 1983), cert. denied, 465 U.S.1107 (1984); United States v. Kiefer, 694 F.2d 1109, 1112-13 (8th Cir. 1982); United States v. Green, 600 F.2d 154, 157 (8th Cir. 1979) (scope of conspiracy in indictment does not limit "conspiracy" for evidentiary purposes).

Courts have routinely adapted their analysis of the "in furtherance of" requirement to the particular facts and circumstances of the conspiracy in question. As a result, it is

26

necessary to consider the nature of the statement, the circumstances in which it is made, and whether it is intended to further an aim of the conspiracy. United States v. Handy, 668 F.2d at 408; United States v.Layton, 720 F.2d at 556-57.

B.  **Authenticity of Documents**

1. Official Document

Rule 902, FRE, provides for the admissibility of public or official documents and records without extrinsic evidence to establish authenticity. Under Rule 902(1), any public document bearing a seal is admissible as to authenticity without the use of extrinsic evidence. Under Rule 902(2), any document bearing the signature of an officer or employee in his official capacity is also admissible as to authenticity.

2. Private or Non-Official Document

Private or non-official documents may be admitted into evidence when they are properly authenticated or identified. Rule 901(b)(1), FRE, provides that this can be accomplished through the testimony of a witness with knowledge that the matter in question is what it is claimed to be. Witnesses with knowledge include those who observed its execution or use in a transaction or otherwise acquired familiarity with it in general, United States v. Helberg, 565 F.2d 993 (8th Cir. 1978), or were exposed to the document in connection with their work. United States v. Rosenstein, 474 F.2d 705 (2d Cir. 1973).

Rule 902(b)(2) provides that a document may be further authenticated by a non-expert as to the genuineness of handwriting based upon familiarity. Such authentication goes to the weight of the evidence and not its admissibility. Strauss v. United States, 311 F.2d 926 (8th Cir.), cert. denied, 373 U.S. 910 (1963).

An admissible document is not rendered inadmissible because it contains some incompetent matter. Miller v. New York Stock Exchange, 550 F.2d 762 (2d Cir.), cert. denied, 434 U.S. 832 (1977); Baltimore and Ohio R.R. v. Felgenhauer, 168 F.2d 12, 17 (8th Cir. 1984).

Rule 106, FRE, addresses this issue:

When writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

However, only so much of the balance of the record as is relevant and sheds light on the part already in evidence may be introduced. United States v. Dennis, 183 F.2d 201, 229-30 (2d Cir. 1950), affd, 341 U.S. 494 (1951). There is no rule that, once any part is admitted, the entire document must be received. Camps v. N.Y.C. Transit Authority, 261 F.2d 320, 322 (2d Cir. 1958).

## C. Use of Summary Witness and Summary Charts and Exhibits

### 1. Introduction

The United States intends to use the case agent as a summary witness and intends to use summary exhibits, including

charts during the course of this trial.  These summary exhibits will summarize hundreds of pages of records and testimony of witnesses in order to show the extent of fraud committed by the defendant and his co-conspirators, how the money was laundered by them, and to prove other relevant matters. The United States may also utilize organizational charts which outline some of the persons involved in the conspiracy and their connection.

　　　　2.  Pertinent Law

　　　　Federal Rule of Evidence 1006 provides that contents of voluminous writings, recordings, or photographs, which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  United States v. Daniels, 986 F.2d 451 (11th Cir. 1993).  The summary evidence may relate either to exhibits received into evidence or oral testimony.  United States v. Gold, 743 F.2d 800 (11th Cir. 1984).  Evidence summaries must be supported by evidence previously presented to the jury before they may be admitted.  United States v. Scrima, 819 F.2d 996 (11th Cir. 1987).  The decision to admit summary charts and exhibits is within the discretion of the trial court.  United States v. Harmas, 974 F.2d 1262 (11th Cir. 1992).  A cautionary instruction should be issued advising the jury that summaries represent party's contentions of what admitted evidence shows and that primary and governing evidence is the evidence that is being summarized. United States v. Francis, 131 F.3d 1452 (11th Cir. 1997).

In <u>United States v. Scales</u>, 594 F.2d 558 (6th Cir. 1979), the defendant was charged with a conspiracy to embezzle and misapply the funds of a labor union, which indictment included 21 overt acts.  The defendant was also charged in fifteen substantive counts.  At trial the government introduced 161 exhibits consisting of thousands of pages of documents and presented the testimony of eight co-conspirators and seventeen other witnesses.    The government presented testimony of a Special Agent who provided a summary of the charges in the indictment and also summarized a count or an overt act by making reference to some of the proof already in evidence.  The defendant objected stating, among other grounds, that Rule 1006 does not apply because each document could have and was examined at the time of its admission.  The Sixth Circuit in denying the defendant's objection stated that (594 F.2d at 562):

There is no requirement in Rule 1006, however, that it be literally impossible to examine the underlying records before summary or chart may be utilized.  All that is required for the rule to apply is that the underlying "writings" be voluminous and that in court examination not be convenient.  With 161 exhibits, involving facts relevant to sixteen counts and twenty-one overt acts, comprehension of the exhibits would have been difficult and certainly would have been inconsonant, without the charts utilized by the Government (Citations omitted).


Similarly, in <u>United States v. Daniels</u>, 986 F.2d 451 (11th Cir. 1993), a summary of telephone records was held to be admissible to show the association of the defendants with each

other.

The use of charts in the opening statement and closing argument is governed by the same principles that apply to the use of charts at trial.  See United States v. Churchill, 483 F.2d 168 (1st Cir. 1973); United States v. Rubino, 431 F.2d 284(6th Cir. 1970).  As described above, the charts will help the jury picture the structure of the transactions at issue thereby effectuating the recognized goal of an opening statement -- "to give the broad outlines of the case to enable the jury to comprehend it." Virgin Islands v. Turner, 409 F.2d 102, 103 (3d Cir. 1969), and "to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole." United States v. Dinitz, 424 U.S. 600 (1976) (Burger, C.J., concurring).

D.  **Evidence as to Conduct of a Witness**

**Rule 608(b) of the Federal Rules of Evidence**

Defense counsel may try to admit into evidence prior drug use of a witness.  Rule 608(b) of the Federal Rules of Evidence states that specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, may not be proved by extrinsic evidence.  These matters may be the subject of cross-examination of the witness if probative of the witness' character for truthfulness or untruthfulness.  Thus, defense counsel may certainly not have testimony or bring in documents regarding the

alleged drug use of a witness.  See <u>United States v. Matthews</u>, 168 F.3d 1234 (11th Cir. 1999).  With respect to cross-examination, a witness' drug use may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.  See <u>United States v. Sellers</u>, 906 F.2d 597, 602 (11th Cir. 1990); <u>United States v. Holmes</u>, 680 F.2d 1340, 1353 (11th Cir. 1982).  If admitted for the purpose it may be prudent to provide a cautionary instruction to the jury explaining the purpose of the testimony.

Respectfully submitted,

UNITED STATES ATTORNEY

By:      _____
         JEFFREY N. KAPLAN
         Assistant United States Attorney
         Court No. A5500030
         500 E. Broward Blvd., 7th FL
         Ft. Lauderdale, FL 33394
         Tel: (954) 356-7255
         Fax: (954) 356-7336

32

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail, this _____ day of October, 2001, to: Joel Hirschhorn, Esq., Douglas Center, Penthouse One, 2600 douglas Road, Coral Gables, Florida 33134.

_____
JEFFREY N. KAPLAN
Assistant United States Attorney

33