UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRUCE HOLLANDER,

    Defendant.
_____/

NIGHT BOX FILED
JAN - 3 2002
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

### DEFENDANT'S OBJECTIONS TO THE
### PRE-SENTENCE INVESTIGATION REPORT

Defendant, BRUCE HOLLANDER, by and through undersigned counsel, files his Objections to the Pre-Sentence Investigation Report, and, as grounds therefore, states as follows:

**Paragraph 6:** Objection: Defendant objects to the use of the phrase "greatly inflated" prices. At the trial, the evidence established that Mark Cohen and Eric Silverman purchased homes at below market value, and resold them at market prices, based on third-party real estate appraisals.

**Paragraph 7:** Objection: Defendant objects to the phrase " inflated prices" (see objection to paragraph six above).

**Paragraph 8:** Objection: Defendant objects as there was no proof at trial with respect to the first sentence. With respect to the second sentence, the reality is that apparently less than ten percent of the total number of mortgages at issue went into

foreclosure. There is no evidence in the record for the statement "many of these mortgages have gone into foreclosure or are in trouble." Defendant believes the National average and South Florida average for mortgage foreclosures of similar home purchases is approximately the same. Defendant also objects to the third and fourth sentences as there was no testimony at trial with respect to the statements contained in these two sentences and in any event, whether these were variable interest rate loans as a result of which monthly payments increased, or not, was not relevant to the issues at trial. Defendant likewise objects to the last sentence of this paragraph which references the home purchasers as "victims." Defendant was under the impression from the way in which the Government conducted the trial that the homeowners/mortgage borrowers were not the victims, but rather HUD and Corinthian were the victims.

**Paragraph 9:** Objection: Defendant objects to paragraph nine as he does not recall any evidence at trial with respect to the statement set forth in this paragraph and, in any event, Defendant was not aware of the contents of this paragraph at the time this conduct was apparently engaged in by Cohen and others.

**Paragraph 10:** Objection: Defendant objects to the statement "immediately thereafter, Silverman entered into a purchase/sales contract with the borrower for $15,000.00 more," which is referred to as the 'flip' (the difference between the "A" to "B" purchase price and the "B" to "C" purchase price). Defendant contends, and the evidence supports, that the difference in price does not determine whether a particular real estate deal is a "flip." A real estate deal is a "flip" if "**B**" sells "**A**"s property to "**C**" at a simultaneous closing or uses "**C**'s" money to buy the property from "**A**."

2

**Paragraph 11:** Objection: Most of the activities described in this paragraph were not undertaken by Defendant. The evidence was clear that the Defendant had nothing to do with the verification of employment, verification of income, gift fund letters or inspection reports (unless otherwise specifically directed by the lender to collect certain documentation at closing). Further, there is no document known as a "title commitment letter. While Bruce Hollander prepared all but one title commitment, the only closing documents Bruce Hollander/Automative Title Services ever prepared were the closing documents not prepared by the lender, Corinthian. Ordinarily, all mortgage loan and related documents were prepared by the lender.

**Paragraph 12:** Objection: Defendant was not aware until late January, 1998 of the illegal mortgage fraud activities of Cohen and Silverman, and then he was only made generally aware of their activities with respect to the mortgage lender's borrower approval process and verification of income.

**Paragraph 13:** Objection: Defendant has no knowledge of the information in this paragraph.

**Paragraph 14:** Objection: Defendant has no knowledge of the information in this paragraph.

**Paragraph 15:** Objection: Defendant objects for the same reason set forth in ¶ 12, except, in addition, Defendant continues to dispute Cohen's and Silverman's testimony insofar as they purport to ascribe actual knowledge to Defendant. Defendant maintains he did not know,--for certain or explicitly—of the gift funds scheme concocted and executed by Cohen and Silverman.

3

**Paragraph 16:** Objection: Defendant objects to the first phrase of this paragraph: "while the documentation necessary was being compiled." In fact the evidence at trial established that the loan had already been approved. Defendant further objects to the phrase "the mortgage companies would not have funded the loans if they would have been aware of the flip." At trial, Defendant recollects that Ms. Davidson testified on behalf of Corinthian, that the underwriter would have looked more closely to satisfy itself that the sales prices were fair prices (i.e. within market limits) and not that the underwriter/lender would not have funded the loans.

Defendant also objects to the statement that "gift funds were paid prior to closing." Defendant maintains that is simply not true, that never happened. No gift funds were ever paid before closing. All gift funds were paid at, during (or after) closing and gift funds were always paid. Defendant further observes that HUD and the lender's instructions explicitly stated that sellers were permitted to pay up to three percent of the purchase price towards closing costs. (For example, if the purchase price was $70,000.00, the seller could pay up to $2,100.00 of the closing costs).

While some of ARC's proceeds were made payable to Eric Silverman and cashed by him, Defendant did not actually know Silverman was using some of those checks to purchase gift fund checks for the buyers.

**Paragraph 17:** Objection: Defendant objects to the total evaluation of "more than $15,000,000.00." Defendant understood at all times that the total amount of mortgages was $11,000,000.00. This was the figure used at trial by the prosecution. Defendant also objects to the sentence: "the average flip was $15,000.00." Defendant contends this is simply not accurate with respect to the "average flip" for the forty-one transactions in

4

which Defendant was directly involved. Defendant contends that merely because a loan has gone into foreclosure is not the test for loss amount. The test should be the actual amount of principal lost as a result of the foreclosure and resale. A mortgage might go into foreclosure yet the foreclosure is not concluded because the borrower and lender were able to work matters out or the property was refinanced or even sold. Defendant does not recall any evidence regarding the average amount of the 125 "flips." The actual figures predicated on the forty-one HUD closings in which Defendant was involved are:

> Average: 13,363.41 per "flip"
> Actual: 547,900.00 (total difference between the two sales prices)[1]

**Paragraph 18:** Objection: Defendant objects to the statements within this paragraph. Defendant has requested that the probation officer produce the data from which this $15,000.00 amount was derived. Defendant concedes that the Government is entitled to compute the loss based on actual and concluded foreclosures, but Defendant contends that the Government is not entitled to some hypothetical average "flip" price deficiency, especially where the actual figures are capable of being computed, (and which the Defendant is in the process of computing).

Moreover, Defendant contends that factors such as appreciation of the value of the property since purchase, those properties which have been refinanced, resold by the original purchasers, acquisition of additional financing (such as second mortgages or home equity loans) and a higher current fair market value all ought to be taken into consideration for calculating the loss for relevant conduct purposes.

---

[1] This figure includes the charges for payment of tax prorations and other costs which ought not be included in the actual loss calculation.

**Paragraph 21:** Objection: Defendant again objects to the use of the phrase "inflated price." As indicated in Defendant's objection to ¶ 6 there was a legitimate resale, with the price virtually always equal to the appraised market value. Upon occasion, the resale would be slightly below the appraised market value, but the resale was **never** above the appraised market value.

Defendant further objects to the statement that he was paid between $700.00 and $1,500.00 for each closing and also a monthly retainer. Defendant's gross fees from the forty-one transactions were $31,754.52. The gross fees did not take into consideration ordinary operating expenses, salaries, rent, cost of doing business, and payments to third-party venders, including the cost of title insurance charged by the underwriter. Defendant's **net** fees for the forty-one closings (earned by both Bruce Hollander, P.A. and ATS) averaged only $587.15 each.

In addition, as the evidence at trial reflected, Defendant was paid a monthly retainer for only three to four months. This modest monthly retainer ($500.00) was to assure accessibility and availability by Bruce Hollander to ARC, and was paid for actual services, not for perpetuation of any scheme.

Defendant acknowledges that he was involved in forty-one closings and while six may have gone into foreclosure and been resold, the loss computation should be predicated on what the properties were sold for and whether HUD suffered a loss as a result of same. Defendant has no knowledge about any additional foreclosures between January 1998 through January 1999. No such evidence was presented at trial. Moreover, Defendant points out that it is impossible for Defendant, who only was involved in forty-one transactions, to have had twelve foreclosures if Cohen, who was involved in all one

hundred and twenty five transactions only had eight foreclosures (see Pre-Sentence Investigation Report ¶ 19 at page 8).

Defendant disagrees with the $943,351.00 loss figure. Defendant maintains that the loss figure cannot, as a matter of law, include uncharged conduct loss (Grant and King). Consequently, at a minimum, the $106,000.00 attributable to the Grant and King transactions should be deducted from the $943,351.00 thus leaving a net of $837,351.00.

However, Defendant, through counsel, has written to the probation officer requesting the data supporting the probation officer's conclusion that the "actual and expected loss attributed to the Defendant is $943,551.00." As Defendant understands the existing case law, interest and certain other expenses (such as Court costs and attorney's fees) are not included in the actual loss figure. If the loss figure is predicated on the amount of deficiency judgments arising from foreclosure, then to the extent these deficiency judgments include interest, attorney's fees and Court costs, that sum should be deducted from the $943,551.00 for a correct "actual and expected loss" figure.

Defendant objects to the statement that he "....launder[ed]..." funds through payments to Eric Silverman and American Redevelopment Corporation." Defendant likewise objects to the statement that he is responsible for restitution in the amount of $388,183.00 in favor of HUD.[2] Defendant has requested, through counsel, that the probation officer provide counsel with the manner in which the probation department arrived at the $388,183.00 figure.

Defendant also objects to the attempted inclusion of a loss from a non-HUD insured lender in the amount of approximately $25,900.00.

---

[2] Defendant believes that one of the foreclosed properties were sold directly by the lender and was not deeded to HUD, hence HUD did not incur a loss with respect to these two properties.

Defendant's computation of the loss is: $67,009.82.

**Paragraph 31:** Objection: Defendant, for the reasons stated in paragraph 21 objects to the amount of the restitution figure of $388,183.00. Until such time as Defendant has had an opportunity to review the data upon which the probation officer came to the conclusion of the $388,183.00, Defendant is not prepared to stipulate to same for restitution purposes.

**Paragraph 33:** Objection: While Defendant did not provide a statement to the probation officer, he is in the process of doing so. Defendant maintains that he will be entitled to (acceptance of responsibility) as Defendant went to trial because he did not believe that the title commitments he prepared were material, relevant or relied upon by either HUD or Corinthian and therefore as a matter of law he needed to preserve that issue for Appellate purposes.

**Paragraph 39:** Objection: Defendant objects to the base offense level predicated on the $943,351.00 figure. Defendant maintains the actual and expected loss is less. Defendant understands that under the sentencing guidelines, if the loss is more than $400,000.00 there will be no change in the base offense level. However, should the loss drop below $400,000.00, the offense level should be adjusted accordingly.

**Paragraph 40:** Objection: Defendant maintains that a two level increase under U.S.S.G. S. 2S1.1 (b) (2) (B) is inappropriate and, under the facts and circumstances of this case, unproven and unconstitutional as applied.

**Paragraph 44:** Objection: Object for the reasons set forth in the objections to paragraphs 39 and 40.

8

**Paragraph 46:** Objection: Defendant challenged the law, not the essential facts. Defendant will be submitting a letter accepting responsibility for his actions and misconduct. The only reason that the Defendant put the Government to the "burden" of a trial was to preserve the legal issues which could not otherwise be addressed on Appeal. Defendant contends that once his acceptance of responsibility letter is reviewed, he will be entitled to a downward adjustment of two points.

**Paragraph 53:** Correction: Defendant forgot, when preparing papers for the probation department and in his interview with the probation officer, that he had been arrested in 1969 or 1970 and charged with theft. It is highly unlikely that there will be any record whatsoever of that case although Defendant represents that the charges against him were dismissed by Dade County Justice of the Peace Ruth Sutton (Coral Gables Division). These charges related to a complaint made by a customer of a corporation partially owned by the Defendant at a time when the Defendant was no longer involved in the operation of the corporation. This arrest and dismissal were disclosed to the Florida Bar at the time Defendant applied for (and was granted) admission to practice law.

**Paragraph 57:** Correction: The first line should read: Defendant married Beverly Anne **Olund,** age **57,** on April 28, 1967 in Miami....

**Paragraph 62:** Correction: Third line, the doctors name is Trezza.

**Paragraph 70:** Clarification: Defendant acknowledges the probation officer's statement with respect to the 1992 Bar proceedings is correct. However, with respect to the March 5, 1992 incident, the total amount of fees involved was approximately

9

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

$3,000.00 which was deemed to be "excessive" in the Florida Bar Florida Supreme Court Case Number 76862.

With respect to Florida Supreme Court Case Number 78896, there were no fees involved. The matter at issue was a personal injury retainer letter which provided that if Bruce Hollander and/or his firm were discharged by the client, Mr. Hollander could charge an hourly fee based upon time spent. Shortly after Hollander's client's deposition, Hollander and his law firm felt uncomfortable with the representation and withdrew from the case. Hollander's client sought out other attorneys for representation. The client was unsuccessful in obtaining alternative representation and filed a Complaint with the Florida Bar which found that the retainer agreement provided for an impermissible fee because the original representation was based upon a contingent fee arrangement.

**Paragraph 90:** Correction: The property referenced in this paragraph was in fact sold in February 2001 for $89,200.00. However there was a mortgage of $75,000.00 on the property. Thus the net proceeds were only approximately $14,000.00. The Defendant received half of the $14,000.00 ($7,000.00), **not** half of $82,797.00 or $41,399.00 as reported by the probation officer.

**Paragraph 98:** Objection: Defendant repeats his objections as set forth in the earlier paragraphs. The Defendant believes that the correct adjusted offense level should be no more than fourteen (14) (base level offense of six (6), an upward adjustment of six (6) (assuming the total loss is less than $70,000.00, see ¶ 21, above) and a two (2) point adjustment for use of special skills). This brings the total offense level to fourteen (14) minus a two point anticipated acceptance of responsibility adjustment or a guideline

range of twelve (12), criminal history category I, and guideline imprisonment range of 10-16 months.

**Paragraph 109:** Objection: Defendant believes that certain factors warrant a downward departure including the relative culpability of the Defendant vis-à-vis the other participants, comparative sentencing for the most culpable participants, Eric Silverman and Mark Cohen, and that the amount of the loss overstates the seriousness of the offense and in particular the consequences to Defendant considering his participation and involvement. Defendant will be submitting appropriate Motions for Downward Departure on these, and possibly other grounds.

Respectfully submitted,

HIRSCHHORN & BIEBER, P.A.
Attorneys for Defendant HOLLANDER
2600 Douglas Road, PH One
Coral Gables, FL 33134
Telephone #: (305) 445-5320
Facsimile #: (305) 446-1766

By_____
JOEL HIRSCHHORN
Florida Bar No. 104573

BRIAN H. BIEBER
Florida Bar No. 8140

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. mail this 3rd day of January, 2002, to:

Jeffrey Kaplan, Esq. (via facsimile (954) 356-7336 & U.S. mail)
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Seventh Floor
Fort Lauderdale, FL 33301

Ms. Georgann Stanley
U.S. Probation Officer
Federal Courthouse
299 E. Broward Boulevard
Room 409
Fort Lauderdale, FL 33305-1865

JOEL HIRSCHHORN

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766