UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

BRUCE HOLLANDER,

      Defendant.

_____/



## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

Defendant, BRUCE HOLLANDER ("HOLLANDER"), by and through undersigned counsel, and pursuant to U.S.S.G. §§ 2F1.1 and 5K2.0, files his Motion for Downward Departure, and, as grounds therefor, states as follows:

### I. INTRODUCTION

After a trial by jury, HOLLANDER was convicted of thirteen (13) counts of making false statements to HUD, fraud, and money laundering on November 20, 2001. The Probation Officer's Presentence Investigation Report ("PSI") recommends that HOLLANDER's Total Offense level should be 24 and finds no grounds for a downward departure. (PSI ¶¶ 47, 109). The PSI's recommendations place HOLLANDER in Zone D of the Sentencing Table with a sentencing guideline imprisonment range of 51-63 months. (PSI ¶¶ 104, 98). HOLLANDER has objected to the loss calculation and sentencing calculations contained in the PSI, and HOLLANDER now files his Motion for Downward Departure based on: (A) the loss overstates the seriousness of HOLLANDER's offense, (B) the loss to the victim had multiple causes other

than HOLLANDER's conduct, (C) the victim in this case was also at fault and facilitated the

defendants' conduct, (D) the consequences of HOLLANDER's conviction (loss of his license to

practice law) outweigh the need for incarceration, and (E) based on the recommendations in the

PSI, HOLLANDER's sentence would create a great disparity in between his sentence and the

sentences received by his more culpable co-defendants.

These factors are mitigating factors which were not taken into consideration by the

Sentencing Commission. Additionally, even if each mitigating factor alone would not warrant a

downward departure, the cumulative effect of all the factors taken together does warrant a

downward departure.

## II. AUTHORITY TO GRANT DOWNWARD DEPARTURE

Courts have authority to grant downward departure sentences pursuant to statute, the

sentencing guidelines, and case law.

### A. Statutory Authority

18 U.S.C. § 3553(b) provides courts with authority to grant downward departure

sentences:

> (b)    Application of guidelines in imposing a sentence.--The
> court shall impose a sentence of the kind, and within the range,
> referred to in subsection (a)(4) unless the court finds that there
> exists an aggravating or **mitigating circumstance of a kind, or to
> a degree, not adequately taken into consideration by the
> Sentencing Commission in formulating the guidelines that
> should result in a sentence different from that described**. In
> determining whether a circumstance was adequately taken into
> consideration, the court shall consider only the sentencing
> guidelines, policy statements, and official commentary of the
> Sentencing Commission. In the absence of an applicable
> sentencing guideline, the court shall impose an appropriate
> sentence, having due regard for the purposes set forth in subsection
> (a)(2). In the absence of an applicable sentencing guideline in the
> case of an offense other than a petty offense, the court shall also
> have due regard for the relationship of the sentence imposed to

2

sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C. 3553(b). [Emphasis added.]

## B. Guideline Authority

There are three primary bases under the sentencing guidelines upon which a downward departure may be granted in this case. First, U.S.S.G. § 5K2.0 adopts 18 U.S.C. 3553(b) in allowing downward departures under the guidelines for situations in which mitigating circumstances exist which were not adequately taken into consideration by the Sentencing Commission.

Second, the last paragraph of § 5K2.0 states that, in some instances, offender characteristics or circumstances which are not ordinarily relevant to departures, may in fact be relevant:

> Finally, an offender characteristic or other circumstance that is, in the Commission's view, "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines.

U.S.S.G. § 5K2.0.

Third, the commentary to U.S.S.G. § 5K2.0 provides that courts are not precluded from considering the aggregate effect of the combination of all mitigating factors where any one factor, standing alone, would not provide a basis for a downward departure.

> The last paragraph of this policy statement sets forth the conditions under which an offender characteristic or other circumstance that is not ordinarily relevant to departure from the applicable guideline range may be relevant to this determination. **The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases**

3

**covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case**. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0 Commentary. [Emphasis added.]

## C. Case Law

District Courts are authorized to depart downward in cases which demonstrate "mitigating circumstances of a kind or degree not adequately taken into consideration by the Sentencing Guidelines." Koon v. United States, 518 U.S. 81, 93 (1996). A court may grant a downward departure if circumstances exist that take the case out of the "heartland" of cases. Id. at 93-94. This Court has the discretion to consider the grounds for departure set forth herein because "potential departure factors 'cannot, by their very nature, be comprehensively listed [in the Guidelines] and analyzed in advance.'" Id. at 94 (quoting U.S.S.G. § 5K2.0). In sum, the facts here take this case out of the "heartland" of mitigating factors already contained within the Sentencing Guidelines and previously considered by the Sentencing Commission.

A defendant may be entitled to a downward departure if he is "able to show that in [his] particular case the presence of the **factor** made [his] case an **extraordinary** one." United States v. Pullen, 89 F.3d 368, 372 (7th Cir. 1996) [emphasis added] (citing Koon, supra). The decision of whether this case is "extraordinary" is solely within the discretion of this Court.

In addition, cases have now held that the aggregate effect of all factors is a permissible basis for a downward departure. In United States v. Broderson, 67 F.3d 452 (2d Cir. 1995), the Second Circuit permitted a downward departure based on the aggregate effect of all factors when no factor individually would justify a downward departure, because the "confluence of circumstances" had not been taken into account by the guidelines. Broderson, 67 F.3d at 458.

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

Likewise, the Tenth Circuit and the Sixth Circuit have both allowed for downward departures based on the aggregate effect of all mitigating circumstances.  See United States v. Coleman, 188 F.3d 354 (6th Cir. 1999); United States v. Whitaker, 152 F.3d 1238 (10th Cir. 1998); United States v. Jones, 158 F.3d 492 (10th Cir. 1998).

## III. ARGUMENT

### A.  Calculated Loss Overstates the Seriousness of the Offense

The PSI reflects that HOLLANDER should be liable for a loss of $943,551.00.  Although HOLLANDER has objected to the loss calculation attributed to him, should the Court overrule same, HOLLANDER moves for a downward departure pursuant to U.S.S.G. §2F1.1, because the loss overstates HOLLANDER's culpability.

In fraudulent loan application cases, U.S.S.G. § 2F1.1 grants specific authority for the Court to depart downward where the loss significantly overstates the seriousness of the defendant's conduct.  Section 2F1.1(b) states in relevant part:

> (b) Fraudulent Loan Application and Contract Procurement Cases
>
> * * *
>
> In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct...**Where the loss determined above significantly** understates or **overstates the seriousness of the defendant's conduct**, an upward or **downward departure may be warranted**.

U.S.S.G. § 2F1.1, n.7(b) [Emphasis added.]

The loss calculation sub judice overstates HOLLANDER's offense conduct for the following reasons:

1.     There is no "actual" loss since the properties sold in the "flip" transactions were sold at, or below, appraised value after being purchased below appraised value.

2.      There can be no "expected" loss calculation on those mortgages which are still performing, i.e., being paid.

3.      HOLLANDER's   offense   conduct   consists   of   submitting   title commitments, upon which HUD did not rely.

In sum, a loss of $943,551.00 for HOLLANDER's connection with 41 closings overstates HOLLANDER's offense conduct.  Although six of the 41 went into foreclosure, the remaining 35 have either been satisfied or are currently performing.  Moreover, of all 125 closings completed by all defendants involved in this case, only 8 (or 6.4%) have gone into foreclosure.  The foreclosure rate for the defendants' "flip" transactions is nearly identical to the average rate for HUD insured home purchases in the same geographic area.  See First Defaults by Loan Characteristics; Originations Defaulting Within Two Years, statistics available in https://entp.hud.gov/clas.

U.S.S.G. § 5K2.0 states that the Court may "impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists any aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission' . . ." There are several factors present in HOLLANDER's case which have not been adequately considered by the Sentencing Commission.  The factors above should be analyzed by this Court under the umbrella of "factors not adequately considered by the Sentencing Commission" pursuant to U.S.S.G. § 5K2.0, and a downward departure is warranted.

Although HOLLANDER has objected to the loss calculation in this case, in the alternative, and in the event the Court relies on the Government's loss calculation, the following factors are present in HOLLANDER's case which have not been adequately considered by the Sentencing Commission:

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

- A loss caused in part by the victim, i.e., by the lender's irresponsible lending practices of not verifying information supplied by potential borrowers;

- A loss caused in part by co-defendants' mortgage fraud of which HOLLANDER was unaware;

- Attributing a loss even though the loans are current and performing;

- Attributing a loss even though collateral values presently exceed outstanding debt.

- Attributing a loss even though HUD did not rely on the title commitments, but rather approved the loans before even receiving the title commitments.

For each and all of these factors, the Court should exercise its discretion and grant Defendant's Motion for Downward Departure.

## B.  Multiple Causes of Loss

The loss amount of $943,551.00 also overstates the seriousness of HOLLANDER's conduct because there were multiple causes of the loss that the Government attributes to HOLLANDER.  United States v. Jackson, 798 F. Supp. 556, 557 (D. Minnesota, Third Division, 1992) (citing 18 U.S.C. §3553(b)) [Emphasis Added]; See also Koon v. United States, 518 U.S. 81, 116 S. Ct. 2035, 2044 (1996).  Consistent with Jackson, a downward departure is warranted in this case because the total dollar loss resulting from the offense "overstate[s] its seriousness" as HOLLANDER's conduct was not the "sole cause of the loss."  Id. at 557 (quoting U.S.S.G. §2F1.1, comment 10 (1991) version of Sentencing Guidelines))[1].

The First Circuit has "stated unambiguously that 'multiple causation' of victim loss is a 'Commission-identified' circumstance in which a downward departure may be warranted."

---

[1] HOLLANDER recognizes that the language in U.S.S.G. §2F1.1, comment 10, 1991 version of the guidelines, has been revised to omit the phrase "sole cause of the loss."  See U.S.S.G. 2F1.1, comment 11 (2000).  However, the true meaning and spirit of the comment remains:  This Court may grant a defendant's motion for downward departure where it is shown that the loss was a result of multiple causes.  See, United States v. Shattuck, 961 F.2d 1012, 1017 (1st Cir. 1992) and United States v. Sarno, 73 F.3d 1470, 1501 (9th Cir. 1995).

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

United States v. Rostoff, 53 F. 3d 398, 406 (1st Cir. 1995) [Emphasis in original] (quoting United States v. Gregorio, 956 F. 2d 341, 347 (1st Cir. 1992)). The Rostoff Court held that the Sentencing Guidelines (and the case law interpreting same) defines "an outright endorsement of multiple loss causation as a permissible basis for departing downward, and, indeed, as a departure-justifying reason that the Guidelines encourage." Id. at 406.

In Jackson, 798 F.Supp. at 557, the District Court determined a downward departure was "proper because the offense level [was] extraordinarily exaggerated by the dollar value involved, in that the Defendant was a **minimal cause**" of the total dollar loss. Id. at 557 [Emphasis added.] However, monetary loss is relative, and it is appropriate for a District Court to depart downward where the upward adjustment "for the amount of money involved dramatically increase[s] the total offense level out of proportion with the Defendant's participation." Id; citing United States v. Restrepo, 936 F. 2d 661, 667 (2d Cir. 1991).

Moreover, "[t]o the extent actual loss had other, more proximate causes, a discretionary downward departure – but not a mandatory 'loss' adjustment – might be appropriate." United States v. Kopp, 951 F.2d 521, 531 (3d Cir. 1991). In addition, a departure is warranted in those rare situations where, as here, a "… defendant should not be held responsible for the entire loss due to extrinsic reasons beyond his control." United States v. Carey, 895 F.2d 318, 323 (7th Cir. 1990).

HOLLANDER acknowledges that the existence of intervening causes does **not** provide a basis for reducing the amount of **loss** under U.S.S.G. §2F1.1(b)(1) for initial Guideline calculations. (HOLLANDER has also challenged the Government's loss calculation). However, as the Seventh Circuit has held: "**consequential** and **incidental** damages… are **not** to be counted in computing loss **for purposes of sentencing**" under the guidelines. United States v. Marlatt,

8

24 F. 3d 1005, 1007 (7th Cir. 1994) [Emphasis added]. <u>United States v. Morris</u>, 80 F. 3d 1151, 1173-74 (7th Cir. 1996).

HOLLANDER contends that any one of the three intervening, consequential or incidental causes is sufficient to justify a downward departure. Certainly when one considers the synergistic effect of all three together, a downward departure is highly appropriate to reconcile the distortive effects of multiple causation as uniquely applied to the victims' total loss in this case. <u>See, United States v. Broderson</u>, 67 F.3d 452, 458-59 (2d Cir. 1995) (a downward departure can be based in part on a "confluence of circumstances [that] was not taken into account by the [Guidelines]").

HOLLANDER may no longer challenge the loss amount of $943,551.00, but he may still receive a downward departure from an offense level predicated on Government's loss calculation: as the Ninth Circuit (relying on <u>Shattuck</u>), held: **"Rather, the Defendant may seek a downward departure to mitigate distortions occasioned by forces beyond the Defendant's control."** <u>Id</u>. at 1501 [Emphasis Added], This is the same relief which HOLLANDER respectfully seeks.

The First Circuit, using virtually the same language in dealing with the same issue, held:

> **Rather, whatever distortive effects extraneous causes may have had on the total 'victim loss' calculation may warrant a departure from the applicable GSR.** U.S.S.G. §2F1.1, comment. (n. 10) ('downward departure may be warranted' where 'total dollar loss that results from the offense may overstate its seriousness,' which 'typically occur[s]' when defendant's fraud 'is not the sole cause of the loss'); <u>Kopp</u>, 951 F.2d at 531 ("To the extent actual loss had other, more proximate causes, a discretionary downward departure – but not a mandatory 'loss' adjustment – might be appropriate.'); <u>see</u> <u>United States v. Carey</u>, 895 F.2d 318, 323 (7th Cir. 1990) (*departure from* GSR warranted under §2F1.1 where 'defendant should not be held responsible for entire loss due to extrinsic reasons beyond his control'); <u>see generally</u>, <u>Gregorio</u>, at 345-348 (discussing U.S.S.G. §2F1.1, comment. (n. 10) and rejecting claim that 'multiple causation' should be considered in calculating the GSR, rather than as basis for departure).

<u>Shattuck</u>, 961 F.2d at 1017.

Application of the departure rule fashioned by the First and Ninth Circuits is precisely the relief sought by HOLLANDER and, based upon these unique case specific facts and circumstances as will be established by the anticipated testimony and exhibits which will be offered, is appropriate under U.S.S.G. §2F1.1.

If there are multiple causes of a loss, unrelated to the defendant's conduct, the Court has discretion to depart downward. In the recent case of United States v. Rostoff, 53 F.3d 398 (1st Cir. 1995), the sentencing court departed downward over 50% from the § 2F1.1(b)(1) guideline range of 27-33 months on the ground that there were multiple causes of the loss. See also United States v. Miller, 962 F.2d 739, 743 (7th Cir. 1992) (sentencing court in a **HUD fraud** case departed downward two levels on the ground that some of the loss was not attributable to the defendants). The reasoning in Rostoff was reaffirmed in United States v. Ottens, 74 F.3d 357 (1st Cir. 1996), in which the court stated that multiple causes of the loss can constitute grounds for a downward departure, as did the court in the recent case of United States v. Morris, 80 F.3d 1151, 1172 (7th Cir. 1996) (stating that "[t]o the extent [the] actual loss had other, more proximate causes, a discretionary downward departure-but not a mandatory 'loss' adjustment-might be appropriate," quoting United States v. Kopp, 951 F.2d 521, 531 (3rd Cir. 1991)).

In HOLLANDER's case, if there is a loss established involving any of the loans at issue in this case, there are at least three causes of the loss which do not relate to HOLLANDER:

1.    Conduct of lender

Although HOLLANDER disputes that there is a loss on any of these properties (the current property values exceed the current outstanding loan balances), if the Court disagrees and finds that there is a loss, HOLLANDER submits that any loss was caused at least in part by the lender's irresponsible lending practices which included not verifying information supplied to the

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

lender by the borrower. The PSI ascribes $943,551 in loss to these loans. The amount of loss, if any, attributed to these loans should be mitigated in light of the lender's cavalier lending practices.

The Guidelines do not contemplate or make adjustments for losses caused in part by the victim itself. As the factor of victim fault is not adequately considered by the Guidelines, and since it a major factor of any loss in this case, a downward departure is warranted.

2.    Conduct of Co-Defendants

It is undisputed that HOLLANDER's co-defendants engaged in mortgage fraud of which HOLLANDER was unaware until very late in the scheme, virtually the tail end. The co-defendants' criminal conduct has clearly caused much of the loss attributed to HOLLANDER. Had there been no mortgage fraud (misrepresentation of borrowers' employment and income in order to secure the loans), there may have been no foreclosures. This conduct on the part of the co-defendants was completely separate from any of HOLLANDER's conduct and was an intervening cause of the loss in this case.

3.    Conduct of HUD

HUD did not rely on the title commitments that HOLLANDER provided. In fact, HUD approved the loans before even receiving (if it ever did) and reviewing (if it ever did) the title commitments. HUD's approval process amounted to "rubber stamping" all of the loans involved in this case. As a result, it is difficult to say that HOLLANDER caused HUD to approve loans when HUD approved loans before seeing the title commitments which HOLLANDER provided.

### C.  Consequences of Conviction Outweigh Need for Incarceration (The Loss of License to Practice Law)

HOLLANDER will lose his law license as a convicted felon. Automatic disbarment is a severe punishment in and of itself so that, regardless of the sentence imposed, HOLLANDER

11

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

will be doubly punished for his crime. HOLLANDER has made a living by practicing law since 1975 (PSI, ¶ 71). This will cease. After practicing law for 27 years, HOLLANDER will now be unable to earn a living at his chosen profession. This is a mitigating circumstance which was not adequately taken into consideration by the Sentencing Commission and is the type of circumstance for which § 5K2.0 allows a departure, i.e., it takes HOLLANDER's case outside of the "heartland" of a typical Guidelines case.

Although the Eleventh Circuit has held that loss of a professional license is not a proper basis for downward departure in cases in which a defendant had received an enhancement for abuse of position of trust or use of special skill pursuant to U.S.S.G. § 3B1.3 (see United States v. Steele, 178 F.3d 1230 (11th Cir. 1999); United States v. Hoffer, 129 F.3d 1196 (11th Cir. 1997)), HOLLANDER submits that this rule should not be inflexible. HOLLANDER's case is distinguishable from other such cases because his role in the offense was furthered by general knowledge of real estate and not specifically his position as an attorney. The Hoffer court recognized that the rule it established could not be absolute:

> [W]e hold that a factor which is inextricably intertwined with a basis for enhancement under the guidelines will **ordinarily** be a prohibited basis for a downward departure from the guidelines.

Hoffer, 129 F.3d at 1206. [Emphasis added]. HOLLANDER maintains that the circumstances of his case are outside the ordinary cases that were envisioned by the Hoffer court.

Loss of a license has been found to warrant downward departure prior to the enactment of the guidelines. In U.S. v. Doe, 53 F.R.D. 361 (S.D. NY 1971), the court departed downward and reduced the defendant's sentence, finding that the revocation of the defendant's Certified Public Accountant license was punishment to the defendant. The court found that this was a mitigating circumstance in formulating a sentence:

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

> While it may be well said that every member of a profession is fully aware that he endangers his license when he violates the law's prohibitions, the fact remains that when the loss actually occurs it is most severe; *obviously it is not among the losses sustained by the vast majority of offenders.* From our judicial experience we learn that the possible loss of professional standing rarely occurs to the offender; he thinks first of the penalty of imprisonment, of the criminal fingerprint; we observe that whatever may be his estimate of his professional license, its actual forfeiture invariably produces a crushing effect on him.

Id. at 363 (emphasis added).

Similarly, HOLLANDER's loss of his law license is a mitigating factor which the Sentencing Commission did not adequately consider in formulating the Guidelines, and as such, HOLLANDER is entitled to downward departure on this basis. For this reason, a downward departure should be granted to HOLLANDER so that he is not unduly punished for his crime.

### D. Victim Fault

HOLLANDER also seeks a downward departure due to the conduct of HUD and the lender. Although this case does not involve a victim's provoking a violent act, U.S.S.G. § 5K2.10 may still apply. Both HUD and the lender implicitly approved of HOLLANDER's conduct by approving loans **before** HOLLANDER provided a title commitment. See United States v. Birch, 57 F.3d 1078 (9th Cir. 1995) (Unpublished Disposition) (conduct of bankers in approving of defendants' conduct, either implicitly or by past practice, contributed significantly to provoking defendants' offense and justified downward departure pursuant to U.S.S.G. § 5K2.10).

However, if this Court determines that U.S.S.G. § 5K2.10 does not apply to the facts of this case, then the victim's conduct may still be considered on a motion for downward departure. In Rostoff, the First Circuit affirmed a downward departure in a fraud case based on the calculated loss' overstating the seriousness of the defendants' offense. Rostoff, 53 F.3d at 409.

13

The First Circuit found that the bank, which had approved loans included in the loss calculation, was partly responsible for the losses because it did not follow procedures which would have protected it against loss. Id. at 403, 405. Likewise, in the present case, both the lender and HUD were eager to approve loans without adequately verifying borrowers' credentials or the title commitments provided by HOLLANDER.

On this basis, HOLLANDER is entitled to a downward departure as a result of HUD and the lender's negligent business practices which escalated the offense conduct.

### E. Sentence Disparity

Downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances. United States v. Daas, 198 F.3d 1167, 1180-1181 (9th Cir. 1999).

However, the Eleventh Circuit has frequently held, to the contrary, that sentencing disparity is not a ground for downward departure. See United States v. Regueiro, 240 F.3d 1321, 1325-1326 (11th Cir. 2001); United States v. Quinn, 123 F.3d 1415, 1425 (11th Cir. 1997); United States v. Chotas, 968 F.2d 1193, 1198 (11th Cir. 1992). HOLLANDER contends the view of the Ninth Circuit appears to be more in line with recent rulings of the Supreme Court. Eleventh Circuit cases that refuse to allow sentence disparity to be recognized as a basis for downward departure rely on Chotas. However, Chotas was decided before the Supreme Court's decision in Koon. In Koon the Supreme Court stated,

> We conclude, then, that a federal court's examination of whether a
> factor can ever be an appropriate basis for departure is limited to
> determining whether the Commission has proscribed, as a
> categorical matter, consideration of the factor. If the answer to the
> question is no--as it will be most of the time--the sentencing court
> must determine whether the factor, as occurring in the particular
> circumstances, takes the case outside the heartland of the
> applicable Guideline.

<u>Koon</u>, 518 U.S. at 109. Because the Sentencing Commission has not proscribed sentencing courts from taking into account sentence disparity, a sentencing court **cannot** categorically exclude sentencing disparity as a basis for downward departure. In fact, Congress has ordered sentencing courts to consider this very basis in determining a particular sentence:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, **shall consider**--
>
> \*\*\*
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...

18 U.S.C. § 3553(a). [Emphasis added].

Co-defendant Mark Cohen was involved in 125 closings, according to the Government responsible for $2,020,896.98 in victim loss, and as the Government has acknowledged, was the most culpable defendant and organizer of the conspiracy. (PSI ¶ 19). Despite this (and his prior criminal history) Cohen received a sentence of only 32 months imprisonment with 3 years of supervised release.

Co-defendant Eric Silverman was involved in 102 closings, and the Government has attributed a loss of $1,675,896.98 to him. The Government also has acknowledged that "Silverman and Cohen are equally as culpable in organizing the scheme and supervising individuals." (PSI ¶ 20). Consequently, Silverman, too, is more culpable than HOLLANDER, was involved in more deals than HOLLANDER, and while not yet sentenced, HOLLANDER's counsel suspects Silverman will receive a sentence less than HOLLANDER's current guideline range.

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

Clearly HOLLANDER, who the Government has acknowledged is not as culpable as Cohen, does not deserve a sentence within the guideline range as calculated in the PSI (51-63 months, PSI ¶ 98). If HOLLANDER were to receive such a sentence, there would be a great disparity among the sentences of HOLLANDER and his co-defendants in violation of 18 U.S.C. § 3553(a).

## F. CONCLUSION

Even if this Court finds that none of the mitigating factors contained herein is an adequate basis for downward departure in and of itself, other circuits have held that the aggregate effect of all factors is a permissible basis for a downward departure. In <u>United States v. Broderson</u>, 67 F.3d 452, 458 (2d Cir. 1995), the Second Circuit permitted a downward departure based on the aggregate effect of all factors when no factor individually would justify a downward departure, because the "confluence of circumstances" had not been taken into account by the guidelines. Likewise, the Tenth and Sixth Circuits have both allowed for downward departures based on the aggregate effect of all mitigating circumstances. <u>See United States v. Coleman</u>, 188 F.3d 354 (6th Cir. 1999); <u>United States v. Whitaker</u>, 152 F.3d 1238 (10th Cir. 1998); <u>United States v. Jones</u>, 158 F.3d 492 (10th Cir. 1998). HOLLANDER, even if not entitled to a downward departure sentence on any one of the mitigating factors listed herein, has presented several facts which, when combined, justify a downward departure sentence.

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

WHEREFORE, Defendant, **BRUCE HOLLANDER**, for the reasons stated and based on the authorities cited herein, prays that this Honorable Court will depart downward from the applicable Sentencing Guideline range as it deems appropriate when imposing sentence on Defendant, and for such other and further relief as is just and proper.

Respectfully submitted,

HIRSCHHORN & BIEBER, P.A.
Attorneys for Defendant HOLLANDER
2600 Douglas Road, PH One
Coral Gables, FL 33134
Telephone #: (305) 445-5320
Facsimile #: (305) 446-1766

By: _____

JOEL HIRSCHHORN
Florida Bar No. 104573

BRIAN H. BIEBER
Florida Bar No. 8140

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. mail this 21st day of February, 2002, to:

Jeffrey Kaplan, Esq.
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Seventh Floor
Fort Lauderdale, FL 33301
(via facsimile (954) 356-7336 & U.S. mail)

Ms. Georgann Stanley
U.S. Probation Officer
Federal Courthouse
299 E. Broward Boulevard, Room 409
Fort Lauderdale, FL 33305-1865
(via facsimile (954) 769-5566)

_____

JOEL HIRSCHHORN