

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRUCE HOLLANDER,

    Defendant.

_____/

### DEFENDANT'S SUPPLEMENT TO MOTION FOR DOWNWARD DEPARTURE AND SUPPLEMENTAL OBJECTIONS TO PRESENTENCE INVESTIGATION

Defendant, BRUCE HOLLANDER, by and through undersigned counsel, and by way of Supplement to the Defendant's earlier filed Motion for Downward Departure and Supplemental Objections to Pre-Sentence Investigation (PSI), would show as follows:

1. **(Relatively) Minor Role in Offense**

Defendant acknowledges that he participated in 41 closings (40 directly, 1 partially). The overall conspiracy involved 125 closings. Defendant was but one of six (6) closing agents.[1] The primary HUD/mortgage fraud conspirators were Mark Cohen, Eric Silverman, and Jean Lindor. Cohen and Silverman, as Government cooperators, will receive significantly lower prison sentences than Defendant. Lindor is a fugitive and is yet to stand trial.

In terms of closings, Defendant was involved in just less than one-third of all the closings. Defendant is already being penalized two levels upward for his use of special skills. (¶ 41, PSI). However, in the overall conspiracy scheme, Defendant is a relatively minor participant and, therefore, Defendant contends he is entitled to a two (2) level "minor participant" downward adjustment to, or alternatively, departure in the applicable guidelines pursuant to U.S.S.G.§ 3B1.2(b). Amendment 635 to the Guidelines, effective November 1, 2001, incorporated United States v. Isaza-Zapata, 148 F.3d 236, 241 (3d Cir. 1998) as the correct interpretation of this issue. Application Note 3 to U.S.S.G.§ 3B1.2 clearly supports Defendant's position with respect to this issue. Defendant's entitlement, vel non, to the minor participant adjustment depends not only on his own conduct, but the relationship between his own conduct and the conduct of others in the overall conspiracy.

2. **This is a Typical Fraud, Not Money Laundering, Case**

Defendant is not a money launderer. Defendant's connection with 18 U.S.C. § 1956 (h) is merely incidental to the Defendant's activities which constitute the underlying factual basis for the fraud counts and overall conspiracy. This case represents a good example of overcharging by

---

[1] Security Title/Hyder: 20 closings; Title Express and Total Title/Poplick: 50+ closings; Certified, Home & Sun Title: 3 each.

the Government. Even if one or two of Defendant's checks were "recycled" by Cohen/Silverman, Defendant was not aware of the significance of their use of those checks. Defendant was not aware that his conduct with respect to the checks at issue could, or would, be construed to be money laundering. This is a fraud case. The money laundering allegations and conviction are incidental to the fraud. The money laundering facts are outside the "heartland" of money laundering cases as contemplated by the Federal Sentencing Guidelines and the Sentencing Commission. Defendant contends, therefore, he should not receive the two level increase as recommended by ¶ 40 of the PSI based on the improper application of the money laundering guidelines or, alternatively, because the application of that guideline is outside the "heartland" of the guidelines intended purpose, Defendant should receive a two level downward departure. Defendant renews his objection to the application of the two level upward adjustment based on the 18 U.S.C. § 1956(h) conviction. See United States v. Smith, 186 F.3d 290 (3rd Cir. 1999); but see United States v. Adams, 74 F.3d 1093 (11th Cir. 1996) and United States v. De La Mata, 266 F.3d 1275, 1302 (11th Cir. 2000). See also United States v. Baker, 19 F.3d 605 (11th Cir. 1994) (because "core" offense was mail fraud, the use of the money laundering guidelines substantially overstated the defendant's conduct).

Imposing a two (2) level increase under FSG § 2S1.1(b)(2)(B), results in the adjusted offense level overstating the seriousness of the offense and, therefore Defendant, alternatively requests a two (2) level downward departure to ameliorate the penalty and thus "fit the penalty to the crimes."

### 3. The Lenders lent and HUD Insured Regardless of Disclosure

Defendant was the only closing agent to go to trial. Evidence not presented to the jury, but admissible now, is that while the Defendant's title commitments clearly represented ARC as

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

record title holder, thus obfuscating the true owner's title (although the title commitments did set forth all requirements for ARC and the ultimate purchaser to obtain clear title from the true owner), the other five (5) title agents utilized a variety of methods of disclosure including, disclosing the true title owner of record, thus making it obvious that the transaction was a "flip" closing. Despite the "flip" disclosure, HUD insured the mortgages and other lenders approved the loans. In other words, regardless of the title insurance commitment, whether ARC was disclosed or not, whether ARC was disclosed improperly, or properly, whether an attempt was made to "cover up" the true owner's name and title, the lenders still made the loans and HUD still insured those loans.

In approximately 50 of Title Express/Poplick's title commitments, the true seller ("A") was disclosed. Two deeds were required: 1 from "A" to "B" and the other, from "B" to "C." Hence the lenders and HUD knew (or should have known) these were "flip" transactions. Despite that disclosure, all those loans closed and were insured. Under the circumstances, serious consideration to a downward departure is appropriate as clearly the lending and insuring practices were not commercially responsible – through no fault of Defendant.

### 4. HUD Failed to Mitigate its Damages

As this Court well knows, it is a cardinal principle of law that a non-breaching party has an obligation to mitigate its damages. This is the basic principle underlying the law of contract damages. HUD failed to mitigate its losses.

The manner in which HUD dealt with the foreclosed properties is virtually beyond description. Were this not such a serious matter, HUD's commercial practices in connection with the foreclosure and sale of properties would make a successful television "Sitcom." Consider, for example: The Rochel Francois loan: After taking back the property, rather than

offer it for sale as a "fix up,"[2] HUD paid $9,500.00 to demolish the house, then sold the vacant lot for $10,000.00. Now the Government seeks to "tag" the Defendant with a $109,796.00 loss on a property for which he was not even the closing agent. While Francois is the most egregious, it is symptomatic of HUD's commercial ineptitude and failure to mitigate its own damages.

Under these circumstances, the loss calculation advanced by the prosecutor and endorsed by the PSI significantly overstates the seriousness of the crime. A downward departure is appropriate.

### 5. Improper Inclusion of Loss After Defendant Stopped Performing Closings and Defendant's Revised Loss Calculations

The Government, in its most recent loss calculation submitted to the Probation Department and the Court, seeks to attribute $403,355.00 in additional losses (which includes the $109,796.00 Francois loss described above) to the Defendant for properties closed at other title companies by other totally unrelated title agents months after Defendant stopped doing closings, because the Defendant apparently gave presumptively valid legal advice to Cohen/ Silverman at the beginning of the HUD investigation. This is improper. First, this is uncharged conduct. Second, the closings, per the Government, occurred before the Defendant received notice from HUD of the investigation and prior to Defendant's meeting with Cohen/Silverman to discuss the HUD investigation. Thus, it is clear the inclusion of these items in the loss calculation is improper.

Attached hereto as Defendant's Exhibit 1 is Defendant's calculation of the loss utilizing the Government's format. Defendant contends the proper loss for guidelines purposes is

---

[2] HUD's inspectors determined it would cost $45,000 to render the property (which had been approved for $90,000.00) suitable for habitation/sale.

$120,922.04[3], which is a level 10 increase to the base offense level of 6, for a total offense level (without adjustments) of 16. U.S.S.G. 2B1.1(a) and (b)(1)(F).

### 6. Defendant's Medical Condition

In addition to Defendant's previously documented prostrate cancer, from which he is currently recuperating, Defendant also has a hernia and suffers from Dupetrons syndrome in both hands. These two medical conditions require surgery. The Defendant has been advised that his recovery from his prostrate cancer treatment is not deemed "safe" for at least another 90 to 120 days.

While individually these three factors may not warrant a downward departure, together, Defendant contends they are deserving of this Court's consideration. Alternatively, should this Court deny bond pending appeal, Defendant requests a voluntary surrender to the institution designated no earlier than August 1, 2002.

**WHEREFORE**, Defendant prays that this Court will grant a Downward Departure and or these Supplemental Objections, as appropriate.

> Respectfully submitted,
>
> HIRSCHHORN & BIEBER, P.A.
> Attorneys for Defendant HOLLANDER
> 2600 Douglas Road, PH One
> Coral Gables, FL 33134
> Telephone #: (305) 445-5320
> Facsimile #: (305) 446-1766
>
> By: _____
> JOEL HIRSCHHORN
> Florida Bar No. 104573

---

[3] If this Court agrees that Defendant ought not be held accountable for the 6.8% of the HUD mortgages which would have gone into foreclosure, as a matter of course, then the loss falls below $120,000.00 (but is more than $70,000.00) and the total offense level (without adjustments) is 14. U.S.S.G. 2B1.1(b)(1(E).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. mail this 25 day of April, 2002, to:

Jeffrey Kaplan, Esq.
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Seventh Floor
Fort Lauderdale, FL 33301
(via facsimile (954) 356-7336 & U.S. mail)

Ms. Georgann Stanley
U.S. Probation Officer
Federal Courthouse
299 E. Broward Boulevard, Room 409
Fort Lauderdale, FL 33305-1865
(via facsimile (954) 769-5566)

JOEL HIRSCHHORN

HIRSCHHORN & BIEBER, P.A., DOUGLAS CENTRE, PENTHOUSE ONE, 2600 DOUGLAS ROAD, CORAL GABLES, FL 33134, TEL (305) 445-5320, FAX (305) 446-1766

Bruce Hollander
Loss Calculation

I. PROPERTIES CLOSED BY THE DEFENDANT

A. HUD Loans foreclosed, acquired by HUD, and resold:

|  | Name | Per Government Loss | Per Defendant Loss |
|---|---|---|---|
|  | Steven Garcia | $35,841 | $21,340.96 |
|  | Anibal Georges | 28,861 | 10,587.60 |
|  | Michelle Jackson | 21,109 | 8,622.10 |
|  | David Pinckney | 38,066 | 24,222.00 |
|  | Victor Rivera | 52,726 | 35,995.71 |
| Total |  |  | $100,768.37 |

B. Conventional loans foreclosed, acquired by lender, and resold:

Nitza Garrepy           $25,900**           -0-[1]

C. HUD loans foreclosed, acquired by HUD, and awaiting resale:

| | | | |
|---|---|---|---|
| | Joel Devalon | $44,343* | $20,153.67[2] |
| | Kenneth Gray | $44,343* | -0-[3] |
| Total | | $88,686 | -0- |

D. HUD loans with lis pendens from lender:

Jean Alabre             44,343*             -0-[4]

E. Properties closed by defendant for Wesley Grant and Richard King, using Fraudulent title commitments in same manner as with Cohen and Silverman that have since defaulted, foreclosed, and resold:[5]

| | | | | |
|---|---|---|---|---|
| | Moncada | (9/6/97) | 57,000** | -0- |
| | Ewen | (6/4/97) | 3,000** | -0- |
| | Ismael | (10/7/97) | 25,800** | -0- |
| | Ismael | (10/13/97) | 20,200 | -0- |
| Total | | | $106,000 | -0- |
| Total loss – Automated files | | | $441,532 | $120,922.04 |

---

[1] Not a HUD insured loan.
[2] Recalculated Average of losses.
[3] This property was sold by Gray not foreclosed by the lender or HUD.
[4] Alabre recently filed Bankruptcy. The proceedings are automatically stayed; no loss can be assumed.
[5] Not properly included in loss calculation as this represents uncharged conduct.

Exhibit 1

2. Properties closed at other title companies while the defendant was furthering the scheme by advising other con-conspirators to stonewall HUD and Corinthian Mortgage.[6]

   A. HUD loans foreclosed, acquired by HUD, and resold:

| Name | Close Date | Per Government Loss | Mortgage Title Company |
|---|---|---|---|
| Angelique Charlmont | (4/23/98) | $20, 353 | (Tab/T. Exp) |
| Harry Antoine | (6/13/98) | 32, 129 | (GC/T. Exp) |
| Luders Thomas | (7/02/98) | 66, 360 | (Tab/T. Exp) |
| Rochel Francois | (8/01/98) | 109, 796 | (GC/T. Exp.) |
| Eric Silverman | (4/03/98) | 38, 278 | (Liberty/T. Exp) |
| Total | | $266, 826 | |

   B. Conventional loans foreclosed, acquired by lender, and resold:

| Name | Close Date | Loss | Title Company |
|---|---|---|---|
| Viven Shaw | (8/26/98) | 0** | (GC/T. Exp) |
| Jacqueline Joseph | (7/09/98) | 3,500** | (GC/T. Exp) |
| Total | | $3, 500 | |

   C. HUD loans foreclosed, acquired by HUD and awaiting resale:

| Name | Close Date | Loss | Title Company |
|---|---|---|---|
| Mosenique Pierre | (8/19/98) | 44, 343* | (GC/T. Exp) |
| Jimmy Leandre | (12/9/98) | 44, 343* | (Citrus/T. Exp) |
| Total | | 88, 686 | |

   D. HUD loans with lis pendens from lender:

   Jacqueline Townsend (8/19/98)   44, 343*   (GC/T. Exp)

| | | Per Government | Per Defendant |
|---|---|---|---|
| Total loss - | non Automated files | $403, 355 | -0- |
| Total loss - | Automated files | $441, 532 | $120, 922.04 |
| Grand Total – | All Files | $844, 887 | $120, 922.04 |

\*   Projected loss based on average loss to HUD on all other foreclosed homes in this case.
\*\*   Estimated loss based on review of public records.

---

[6] Defendant maintains he is not legally accountable for any of these losses as set forth in his Supplemental Motion for Downward Departure and Supplemental Objections to the Pre-Sentence Investigation and as will be argued at Sentencing.