3/13/05 12:25 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-DKTH

------------------------------------------------X
UNITED STATES OF AMERICA,
        *Plaintiff,*

Vs.

BRUCE HOLLANDER,
        *Defendant.*
------------------------------------------------X



### DEFENDANT'S SENTENCING MEMORANDUM

### INTRODUCTION

**A.**    **Impact of Booker on Hollander's Resentencing**

On this new sentencing paradigm, the Court must resentence defendant consistent with the directives of *United States v. Booker,* ---U.S.--- 125 S. Ct. 738 (2005) and its mandate for the exercise of judicial discretion *unconstrained by the former system of mandatory guideline sentencing.*[1]

---

[1]    *Booker,* of course, struck down 18 U.S.C 3553(b)(1) which *mandated* the imposition of sentence under the Guidelines. The Guidelines are "advisory" only, just one of a myriad of factors considered by the SRA in arriving at a fair and just sentence consistent with the "evolving common law of sentencing." *See note 6, infra.*

This Sentencing Memorandum addresses new demands placed on the adversarial system by this "sea change" in the evolving "common law of sentencing.["][2] Notwithstanding Hollander's failure to assert a *Jones-Apprendi-Blakely-Booker* claim on direct appeal, defendant is still entitled to *Boooker*'s constitutional safeguards by clearing the plain error hurdle: (1) an error not noticed in the district court is reviewed for plain error, entitling defendant to relief only if she demonstrates: (1) 'error'; (2) that it is 'plain;' and that it 'affects substantial rights.'"[3]

In a case originating in this Court, the Eleventh Circuit now holds that a *"Booker* error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." *United States v. Shelton*, ---F.3d--- 2005 WL 435120*5 (Feb. 25, 2005), reiterating:

> The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; **the error is the**

---

[2]   "The *Booker* decision obliged many courts to reconsider individual sentences imposed under the mandatory regime." *See United Staes v. Jaber*, ---F.Supp..2d--- 2005 WL      , Case No. 02-10201-Cr-Gertner (D. Mass).

[3]   (1) *Booker's* excision of 3553(b)(1) and 3742(e) satisfies the 'error' prong. *Shelton, infra* at *5; (2) "it. . . is clearly enough that the error [is] 'plain' at the time of appellate consideration; and (3) whether there is a reasonable probability  that if the guidelines had been applied in an *advisory* manner instead of a binding fashion,. Finally, it's manifest that the plain error at sentencing "seriously affected defendant's substantial rights. In most contexts it's a formidable task to overcome plain error. However, the standard in this case is easily satisfied. *Shelton* at *7

2

> mandatory nature of the guidelines once the guidelines range has been determined.

*United States v. Rodriguez*, ---F.3d--- 2005 WL 272952*9 (emphasis added).[4]

Axiomatically, defendant meets the "plain error" test. The first and second prongs define the constituted "error" and whether it was "plain." The third prong requires defendant to show that the plain error " affects [his] substantial rights. In applying the critical third prong, the court must determine: [W]hether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of a binding fashion by the sentencing judge in this case. Finally, the plain error "seriously affected the fairness, integrity, or public reputation of judicial proceedings. Shelton, supra at 87. *Rodriguez, supra* at *6 (citation omitted).

There are numerous instances in the record of the previous two-day sentencing hearing manifesting a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of a binding fashion by the sentencing judge in this case." *Id.*[5]

---

[4] This remedy applies to claims of plain error where, as here, defendant establishes a reasonable probability that the district court would have imposed a lesser sentence but for the mandatory guideline regime." *Shelton, supra* at *7, *citing Rodriguez.*

[5] One glaring example is that Judge Ferguson believed he was precluded from considering serious collateral consequences, *i.e.*, loss of license to practice law, based on the Eleventh Circuit's decision in an earlier Ferguson case, *United States v. Hoffer,*

3

In contrast, other post-*Booker* appellate courts find prejudice presumptive in the plain error analysis. *See e.g United States v. Barnett*, ---F.3d--- 2005 WL 37015*10-12 (6th Cir. Feb. 16, 2005).

Fundamentally, the critical query after *Booker* is *how to balance the "purposes" of sentencing in an advisory regime*, a formidable task for the Court, counsel, and probation office.

For sure, *Booker* simplified sentencing in many respects that promote the administration of justice. On the other hand:

> Sentencing will be harder now than it was just a few months ago. District courts cannot just add up figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual. *Booker* is not an invitation to do business as usual.

---

129 F.3d 1196 (1997) in which the judge was severely lambasted, leading Judge Ferguson to state on the record that he was "gun shy" (TR. Sentencing (April 29, 2002) at 162. Defense counsel's argument joining the gross intra-defendant disparity in this case with the collateral consequences also underscored the tension.. At the conclusion of sentencing, the Court expressed "serious doubt about [his] ability to grant a departure. . ." *Id.* at 170. Again, the Court referred to his own prior departure decisions reversed by the appellate court with scathing criticism.

Similarly, Judge Ferguson was "not so certain about interest payments" which he recognized would have been outcome determinative as the SOC for loss, notwithstanding a legion of other judicial errors in consideration of the government's nonsensical, overkill assertions of "loss."

*United Staes v. Ranum*, ---F.Supp.2d--- 2005 WL 161223*2 (E.D. Wis. Jan. 19, 2005).

B.   **Post-Remand Developments**

The Mandate vacating defendant's sentence and remanding for resentencing was received by the district court on February 19, 2004 (DE 322). *United States v. Hollander*, 88 Fed.Appx. 380 (11th Cir. 2003). The case was reassigned to this Court after the trial judge, the Hon. Wilkie Ferguson, died. The Court granted continuances for resentencing, particularly attentive to the decisions in *Blakely* and finally, *Booker*.

The Court of Appeals vacated the sentence imposed by Judge Ferguson on the ground that the court's guideline calculations were unsupported by *any* evidentiary support in the record with respect to the amount of loss properly attributable to Hollander under the express limitations of relevant conduct, USSG 1B1.3. Similarly, the amount of restitution was ordered recalculated "in conformity with the views expressed above."

And most significantly, the scope of resentencing is inherently *de novo* as "[t]he district court will, of course, be free to address *any other issues presented by the parties*, including role in the offense and departures." *Hollander, supra* at 20 (emphasis added)

## C. New "Purposes" of Sentencing

The sentencing scheme has radically changed to permit the Court to reassess and balance the *purposes* of sentencing both in respect of the offense conduct itself and the defendant's personal background, *i.e.*, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. 3553(a)(1).[6]

Though the Sentencing Reform Act of 1984 identifies traditional sentencing "purposes," the legislation itself failed, *inter alia*, to balance the competing priorities and the dominant purposes of sentencing determinable only in the context of case-specific circumstances. Since 1987, courts considered "purposes" in arriving at a sentence subject only to the limitations presented by statute and the Guidelines.[7]

---

[6] Notwithstanding this SRA directive, the Commission itself issued "guidelines"— mandatory in nature and scope— that severely constrained the sentencing judge's consideration of defendant's background and social history, deeming these important factors "not ordinarily relevant." USSG 5H1.1, *et seq.*

[7] The current statutory factors, in addition to just "consideration" of the 'advisory' guidelines, are: (1) retribution or "just punishment;" (2) "deterrence;" (3) incapacitation;" (4) rehabilitation; (5) "the need to avoid unwarranted sentence disparities;" and, (6) "restitution." 18 U.S.C. 3553(a)(1)-(4).

Without agreement on the "purposes" of sentencing though, the Commission had no way to measure sentences against their statutory objectives.   *See* Kate Stith & Jose Cabranes, FEAR OF JUDGING: Sentencing Guidelines in the Federal Courts at 53, n. 5 (1998).[8] *See also* Marc Miller, *Purposes at Sentencing*, 66 S.CAL. L. REV. 413, 419 (1992)(criticizing the Sentencing Commision for failing to articulate a sentencing philosophy).

### D. Renewed Mandate to Enforce Statutory Requirement To Impose a Sentence "Sufficient, But Not Greater Than Necessary" To Achieve the Purposes of Sentencing

Critically, courts had— under the former Guideline regime— entirely discounted or ignored the clear and *singularly overriding legislative purpose* of sentencing announced in the preamble to 18 U.S.C. 3553(a), an all but bastardized section of the

---

[8]   Prophetically, Judge Cabranes and Prof. Stith noted in their seminal work:

> We are confident that eventually the federal sentencing guidelines as we know them will be rejected or significantly modified. The realization that those Guidelines must be replaced will come slowly—perhaps by assertions of judicial authority or changing ideas on the part of the Sentencing Commission as it is reconstituted over time. . . Whatever the future holds, it is not early enough to begin to consider what a new wave of sentencing reform might look like.

*Id.* at 169.

SRA incorporating the criminological imperative of "parsimony" into the sentencing process.

> The court **shall** impose a **sentence sufficient, but not greater than necessary**, to comply with the **purposes** set forth in [18 U.S.C. 3553(a)(2)].

18 U.S.C 3553(a)(emphasis added). The "principal of parsimony," a core sentencing value heretofore advanced only by sentencing scholars and two judges for whom this principle always informed guideline application,[9] must now assume it's rightful position at the core of each sentencing determination. A key provision embodies the concept of 'parsimony,' a principle of the American bar Association Standards for Criminal Justice, CH. 18 (Sentencing Alternatives and Procedures," 18-3.2(iii)("Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction to achieve the purposes for which it is imposed. . ." *United States v. Abbadessa*, 848 F.Supp. 369, 378-79 (E.D.N.Y. 1994).[10]

---

[9] *See e.g.*, Benson Weintraub, *Conference on the Federal Sentencing Guidelines: Summary of Proceedings,* 101 YALE L. REV. 2053, 2054 (1992)("The Sentencing Reform Act. . . incorporates the principal of parsimony favoring imposition of the least restrictive sanction necessary to achieve defined social goals."). *See United* Staes v. Denardi, 892 F2. 269 (3rd Cir. 1989)(Becker, J., dissenting); *United States v. Davern*, 937 F.2d 1041 (6th CIR. 1991) *judgment vacated on rehearing* (Sept. 26, 1991).

[10] See also Richard Frase, *Sentencing Guidelines in the States: Lessons for State and Federal Reformers,* 6 FED. SENT. REP. 123, 124 (1993).

On this point, post-*Booker* sentencing proceedings have maximized the exercise of informed and purpose-driven sentencing discretion that, in reinstating the judge's proper role at was moved to conclude:

> [A]fter carefully considering all of the evidence and applying all of the 3553(a) factors, I declined to follow the guidelines and instead imposed a sentence which was **sufficient, but not greater than necessary**, to satisfy the purposes of sentencing.

*United States v. Ranum, supra* at *2 (emphasis added).

Critically, there is an emerging judicial consensus that ""... [i]n many fraud cases the amount stolen is a relatively week indicator of the moral seriousness of the offense or the need for deterrence." *United States v. Emmenerrer*, 329 F.Supp.2d 416, 427 (S.D.N.Y. 2004).[11]

### E.    The Politics of Sentencing

"The politics of sentencing at the federal level have engendered legislative and executive changes that undercut the measured progression of sentencing reform."[12] In the *Editor's Observations: Taking Stock of the Feeney Amendment*,

---

[11]    The disconnect between lengthy fraud sentences and deterrence was a hot topic with the federal judges with whom I discussed post-Booker sentencing strategies at the Columbia Law School Sentencing Symposium for law professors in January 2005.

[12]    Benson Weintraub & Benedict P. Kuehne, *The Feeney Frenzy: A Case Study in the Politics of Sentencing*, 16 FED. SENT. REP. 114 (Dec. 2003). *See generally*, Kate Stith & Steven Koh, THE *Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines*, 28 WAKE FOR. L. REV. 223 (1993).

Prof. Douglas Berman notes that "[Weintraub & Kuehne] characterize the Feeney Amendment as 'stealth' legislation. . . The shock waves created by the Feeney Amendment have reverberated. . . through all the institutions and groups involved in federal sentencing. . . ." *Id.* 16 FED. SENT. REP. at 93.

> . . .[T]he US Judicial Conference voted to support repeal of those provisions of the PROTECT Act aimed at limiting sentencing discretion and departures from the Sentencing Guidelines.. The decision by the Judicial Conference highlights that the **Feeney Amendment was an added accelerant to the flaming battle between Congress and federal judges** [citing House Judiciary Chairman Sensenbrenner's threat to issue subpoena for sentencing records compiled by Chief Judge James Rosenbaum, District of Minnesota).

Weintraub & Kuehne, note 2, *supra.*(emphasis added). "The attack on Judge Rosenbaum is not only a sign of **the right's attempt to hijack the federal judiciary,** but also trespasses on the constitutional separation of powers. It must stop."[13]

From the Feeney Amendment's clandestine passage in April 2003 until the summer of 2004, the judiciary began responding to the ongoing Congressional assault, noting the pre-*Blakely* imperative of purposeful sentencing:

> By this dissent [by the sentencing judge on remand for resentencing with instructions to deny previously granted downward departure] the Court

---

[13] Editorial, *A Judicial Witch Hunt*, NEW YORK TIMES (April 30, 2003) at A26 (emphasis added).

> submits that **the pendulum for sentencing . . . has moved to far to the right in favor of harsh sentences. We must adopt sentencing goals beyond retribution and deterrence. Our current system costs too much. . . A society can be tough on crime without being vindictive, unjust, or cruel. We must encourage flexible and innovative sentencing. . . as an alternative to prison.** Change is hard, but change is not impossible. . . Perhaps this opinion, as an appeal for the restoration of individualized sentencing, will provoke some thoughtful discussion of these important issues and help restore the traditional sentencing discretion of the district courts usurped by the legislative and executive branches of our government.

*United States v. Dyck*, 287 F.Supp.2d 1016, 1022-23 (D.N.D. 2003)(emphasis added).

This calls for case-by-case rationalized sentencing and correctional paradigms driven by a "knowledge-based system"[14] of sentencing purposes which hold offenders, including Bruce Hollander, adequately accountable to the community with a **sentence or sanction imposed in a manner consistent with the purpose(s) of its imposition**.

### F.    Sentencing Temperatures Rise in Summer 2004

Perhaps as much as Judge Marvin Frankel led the modern sentencing reform movement,[15] it was Justice Anthony Kennedy who presented a daunting, timely, and

---

[14]    Marc L. Miller, *Domination and Dissatisfaction: Prosecutors as Sentence (Symposium—Sentencing and its Purposes)*, 56 STAN. L. REV. 1211, 1218 (2004).

[15]    Frankel, CRIMINAL SENTENCES: LAW WITH DISORDER (Hill & Wang) (1972)

formidable challenge to the legal profession, Congress, the judiciary, and administration at the Annual Meeting of the American Bar Association in 2003.

The **ABA Justice Anthony Kennedy Commission**[16] issued a scathing indictment of the state of the criminal justice system with a digitized image of the revitalized sentencing reform movement. The Final Report, issued in June 2004, was, however, almost completely overshadowed by the concurrent release of the decision in *Blakely*.

"The bottom line," Justice Kennedy concluded, is that "[o]ur resources are misspent, our punishments too severe, our sentences too long." At its core, Kennedy condemned systemic "over-reliance upon incarceration."[17]

## POST-BOOOKER SENTENCING FACTORS

Most significantly, it is *not* useful to determine in advance the weight that sentencing judges should give to applicable ["advisory"] Guideline ranges. Rather, in *United States v. Crosby*, ---F.3d--- 2005 WL 240916 (2nd Cir. Feb. 2, 2005)(emphasis

---

[16]   The ABA Commission held public hearings in national venues and compiled a comprehensive extensively annotated blueprint for sentencing and correctional reform with the able assistance of academic luminaries, lawyers, judges, and others in the federal sentencing system.

[17]   ABA Justice Kennedy Commission Final Report at http://aba.net

added), the Court concluded that it is "More consonant with the day to day role of district judges in imposing sentences. . . to permit the concept of 'consideration' in the text of the applicable Guideline range to evolve. . ."[18]

The revised purposes of sentencing now lend themselves to greater utilitarian analysis by measuring the quality and quantum of sentence according to:

**ACCOUNTABILY, RELATIVE CULPABILITY, DISPARITY AMONG SIMILARLY SITUATED CODEFENDANTS, AND THE NEED FOR THE SENTENC IMPOSED— ALL CONSIDERED AGAINST THE BACKDROP OF THE PRINCIPLE OF PARSIMONY WITH SOME CONSIDERATION OF THE ADVISORY GUIDELINES**

At hearing, the defense will correlate these and other relevant sentencing considerations and recommend imposition of a sentence that is "sufficient, but not greater than necessary, to [achieve the purposes of sentencing].

---

[18]  Consistent with *Booker*, (1) the Guidelines are no longer mandatory; (2) the 'guidelines' could be 'considered' along with other 3553(a) factors; (3) after considering the 'guidelines' and 3553(a) 'purposes,' the judge should decide whether to be guided by the imperfect guidelines, including 'departures,' or (4) impose a non-Guideline sentence entirely and reasonable. And, (5) the sentencing judge is entitled to resolve facts for determining an appropriate sentence.

           Respectfully submitted,

           **BENSON WEINTRAUB, Esq.**
           Counsel for Defendant Hollander
           1 E. Broward Blvd. #700
           Ft Lauderdale, FL 33301
           Tel 954/713-8018, Fax 954/745-5801
           e-mail: benson@nyacc.net
           URL: http://federalsentencing.net

By: _____
           BENSON WEINTRAUB
           FL. Bar No. 0486418

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing notice was sent by hand this 15th day March 2005 to: Jeffrey Kaplan, AUSA 500 E. Broward Blvd. 7th FL Ft Lauderdale, FL 33301; Georgeann Stanley, USPO 299 E Broward Blvd. #409 Ft Lauderdale, FL. 33301.

By: _____