3/19/05 6:27 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-HURLEY



-----------------------------------------------X
UNITED STATES OF AMERICA,
*Plaintiff,*

Vs.

BRUCE HOLLANDER,
*Defendant.*
-----------------------------------------------X

# DEFENDANT'S MEMORANDUM REGARDING PENDING SENTENCING MATTERS

## I. INTRODUCTION

In an effort to provide maximum assistance to the Court in its consideration of pending sentencing matters, defendant respectfully files this memorandum summarizing his positions with respect to relevant sentencing factors.

## II. CONSTITUTIONAL LIMITATIONS ON RESENTENCING

### A. The Resentencing Disposition May Not Exceed the Previously Imposed Sentence of Imprisonment [and other elements of sentence]

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Court held that

341/13

imposition of greater punishment following a defendant's successful appeal, absent particular justification, violates the Due Process Clause:

> Due process of law. . . requires that vindictiveness against a defendant for having successfully attacked his first conviction [or sentence] must play no part in the sentence he receives after a new trial. And since fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.

*Id.* at 725. However, the Court did not foreclose imposition of a greater sentence but expressly held that the judge must articulate specific reasons for this decision:

> Those reasons must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made a part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726. "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by 'objective information. . . justifying the increased sentence." *Texas v. McCullough,* 475 U.S 134, 142 (1986).

As such, the Court may not, consistent with due process, impose a sentence exceeding 51-months imprisonment in the absence of "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce, supra* at 726.

On this record, no intervening circumstances have occurred, nor has the government sought to advance any such circumstances, to warrant an exception to *Pearce* and its progeny.

**B. The Government's Objections to the PSI Seeking Upward Sentencing Enhancements Which Were Not Raised in the First Sentencing Proceeding Are Barred by the Due Process Clause Judicially-Created Limitations**

**Prior to the initial sentencing in this case, the government did not file any objection to the PSI seeking enhancements** for role in the offense, USSG 3B1.1 or obstruction of justice, USSG 3C1.1,[1] or anything else. In the first and second addenda to that PSI (pre-appeal), it states: "The government has reported no objections pursuant to Administrative Order 95-02." *Id.* at Addendum (p. 1), Second Addendum (p. 1)(same).

---

1 *See* PSI (Rev. 3/1/02)

However, once the defendant prevailed on direct appeal and a remand was ordered, the government, for the first time, objected to the PSI for failing to enhance defendant's sentence based on role in the offense, USSG 3B1.1 and obstruction of justice, USSG 3C1.1 (DE ). Additionally, the government moved for an "upward departure" (DE ).

The facts reported in the updated PSI had not changed in any material respect. Abundantly disappointed in the remand order, and the government's reluctant concession that the amount of loss was at least $500,000 less than what it previously argued, the prosecutor sought to raise for the first time *other* objections to maximize defendant's guidelines.

Clearly, this determination was the product of prosecutorial vindictiveness. The Supreme Court has held that to punish

> a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and **for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'**

*Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978)(citations omitted)(emphasis added). In the prosecutorial context, the doctrine holds that a due process violation occurs when a prosecutor takes action to penalize a defendant for invoking a legally protected right.

*See Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974). In *Blackledge*, the Court stressed that a presumption was appropriate even absent "evidence that the prosecutor in this case acted in bad faith or maliciously," *Id.* at 28, because the mere appearance of vindictiveness would chill the right to appeal. *See also United States v. Goodwin*, 457 U.S. 368-373-78 (1982).

The government's attempt to manipulate the guidelines violates defendant's rights under the Due Process Clause of the Fifth Amendment. On this basis alone, the Court must decline to consider the government's objections— plainly made in bad faith— on the merits. Similarly, the Probation Officer's obvious reliance upon the government's demand for a five (5) level increase in the guidelines for role and obstruction must be stricken.

**III.**
**THE MANDATE RULE AND LAW OF THE CASE DOCTRINE**

On the same rationale advanced in *United States v. Mesa*, 247 F.3d 1165 (11th Cir. 2001), the defendant sought to raise a new objection after a successful appeal. The issue in *Mesa* was whether the district court "must consider an issue at re-sentencing on remand that is not within the scope of the mandate and which [a party] failed to raise in his prior sentencing and appeal. . ." *Id.* at 1166. The Court held:

> [P]ost mandate maneuvering in the district courts would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process. . . [and] eliminate any hope of finality.

*Id.* at 1170, *citing Litman v. Mass. Mutual Life Ins. Co.*, 825 F.2d 1506, 1511-12 (11th Cir. 1987)(*en banc*). The policy implications of the mandate rule is as much at stake here as in *Mesa*:

> Requiring the district court to consider the argument at the second re-sentencing following our remand would give [parties] incentive to introduce sentencing objections in piecemeal fashion and would allow them (by their waiting to advance the argument anew at re-sentencing) to avoid the difficult burden of 'plain error' review in their first appeal.

*Id.* at 1171.

Similarly, in *United States v. Adesida*, 129 F.3d 846, 849-50 (6th Cir. 1998), the Court reaffirmed the principle that:

> The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not. A party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who has argued and lost.

*Id.* (citations omitted). "In accordance with the law of the case doctrine, [a party] may not for the first time raise. . . issues before the district court on a remand for resentencing." *Id.* at 851.

In the case *sub judice*, the government has exceeded the scope of the mandate. Plainly, the Eleventh Circuit's statement in *Hollander* that "The district court will, of course, be free to address any other issue presented by the parties, including role in the offense and departures" was insufficiently specific in this regard, mindful that it was the defendant and defendant only who *preserved the record at sentencing* by arguing for a *downward role* adjustment and *downward* departure. Any other interpretation would do violence to this Circuit's firm adherence to the mandate rule and law of the case doctrine. *See e.g., United States v. Tamayo*, 80 F.3d---- (11th Cir. 19--).

For this reason, and based on *Bordenkircher* and *Blackledge,* the government waived its right to now raise new issues in this proceeding, underscoring their tactical error in failing to seek enhancements under 3B1.1 and 3C1.1 in the prior sentencing proceeding or appeal. Had it done so, the issue would have been preserved and the government entitled to appeal any adverse ruling, if any, that the court would have made. And even in the absence of their objections at the first sentencing, the

government could have nonetheless asserted the claim in an appeal authorized by 18 U.S.C. 3742, albeit subject to plain error review.

In this case there are compelling legal and policy reasons which require this Court to preclude consideration on the merits of the government's belated objections which were plainly waived. This, too, is another indicator of constitutionally impermissible prosecutorial mmaneuvering to maximize defendant's sentence at any cost, even if it means violating the clear terms of constitutional limitations and judicially created rules to promote the efficient administration of justice.

## IV.
## IMPACT OF THE APPELLATE DECISION AND MANDATE

The Court of Appeals' decision fundamentally rejected the government's methodology for loss calculation. "We perceive several problems with the approach urged by the government by the district court." *Id.* at 16. Moreover, "[A]ppellant is responsible only for criminal activities he agreed to perform or participate in, and for the foreseeable consequences of such undertakings. . ." *Id.* Additionally,

> We do not believe it can be reasonably held that the appellant agreed to undertake the later closings conducted by competing law firms. Neither can it be said that his knowledge that the co-defendants were likely to, or actually were, conducting additional closings utilizing the services of other firms rendered him criminally responsible for the later closings.

*Id.* at 17. "This had the effect of increasing the government's calculation of loss from $339,925 to $798,669." *Id.* at 16.

In the government's theory of loss determination, it's calculation(s) were grossly inflated, inherently unreliable, and inaccurate as illustrated by a margin of more than $700,000[2] because the original PSI p. 13, para. 39) relied on government's statement of loss in the amount $943,551. The revised PSI [[3/1/02] at p. 12, para. 42) reflected the government's assertion of a $722,858 loss. *Id.*

The sentence was vacated and remanded for "the necessity of re-calculating the guideline range, on the basis of adequate findings concerning losses chargeable to the appellant. . ." *Hollander* at 20.

Now, the government asserts a total loss of $278,998 (Second Addendum to PSI at 3)(3/17/05), a determination that still lacks adequate evidentiary support in the record notwithst5anding S/A Carbonella's sketchy and unreliable testimony.

---

[2] $943,551 - $278,998 = $714,553. The Court of Appeals focused on the corresponding increase in offense levels driven by loss notwithstanding the sentencing judge's failure to make adequate findings on this controverted point.

## V.
## GUIDELINE OFFSETS TO 'LOSS'

The government's loss figure impermissibly includes "interest. . . finance charges, late fees, penalties. . . and similar costs." USSG 2B1.1, comment. (n. 3(D). In this case, the government has also failed to adjust its 'loss' figure for "credits against loss," Id. at n. 3(D)(ii).

## VI.
## STANDARD OF EVIDENCE

Under the advisory guidelines, multi-object conspiracies, including the case *sub judice,* must be determined on the basis of evidence proven beyond a reasonable doubt. USSG 1B1.2(d). *See United States v. Vallejo,* 297 F.3d 1154, 1170-71 (11th Cir.. 2001); *United States v. Farese,* 248 F.3d 1056, 1060-61 (11th Cir. 20010; *United Stat6es v. McKinnley,* 995 F.2d 1020, 1026 (11th Cir. 1993).

## V.
## DEFENDANT'S POSITION WITH RESPECT TO RESTITUTION

The term "value of property" in 18 U.S.C. 3663A(b)(1) does not include payment of consequential damages for restitution purposes. In *United States v. Remillong,* 55 F.3d 572 (11th Cir. 1995), the Court reversed the restitution order, holding that restitution extends "only for the loss caused by the specific conduct

underlying the offense of conviction,[3] noting that "five other Circuits have held that restitution does not include the award of consequential damages, such as attorney fees and expenses." Id. at n. 6.

Thus, the Court may not include incidental or consequential damages in determining the amount of restitution.[4] *See e.g., United States v. Simmons,* 235 F.3d 826, 833 (3rd Cir. 2000)(MVRA prohibits "consequential damages, such as attorneys' fees, [and] are not recoverable as restitution.")(emphasis added); *United States v. Shepard,* 269 F.3d 884, 887 (7th Cir. 2001)(restitution limited to "direct losses and not for other consequential damages," recognizing exclusion of attorneys' fees).[5]

This applies *a fortiori* to HUD which S/A Carbonella testified insured these loans for the lenders. *United States v. Schinnell,* 80 F.3d 1064, 1070-71 (5th Cir.

---

3 *See e.g., Hughey v. United States,* 495 U.S. 411, 413 (1990).

4 Even the determination of "loss" for relevant conduct purposes ,excludes "costs to the government of, and costs incurred by victims primarily to aid the government in, the prosecution and criminal investigation of the offense." USSG 2B1.1, comment.[(n. 2(D)(ii)].

5 *See also Gov't Virgin Islands v. Davis,* 43 F.3d 41, 45 (3rd Cir. 1994); *United States v. Patty,* 992 F.2d 1045, 1049 (10th Cir. 1993); *United States v. Mullins,* 971 F.2d 1138, 1147 (4h Cir. 1992); *United States v. Arvinitis,* 902 F.2d 489, 497 (7th Cir. 1990); *United States v. Walker,* 896 F.2d 295, 307 n. 26 (8th Cir. 1990).

1996)("cost of employing counsel to recover from an insurance company" prohibited by MVRA.

The Mandatory Victims Restitution Act (MVRA), codified at 18 U.S.C. 3663A-3664, is a "criminal penalty" *United States v. Siegel*, 153 F.3d 1256, 1259 (11th Cir. 1998) and inclusion of consequential or incidental damages, or costs not authorized by statute, constitutes an illegal sentence.

The restitution order must be based only on the value of property taken, *i.e.*, loss proximately caused by the offense of conviction, less the value of any part of that property that is returned. 18 U.S.C. 3663A(b)(1)(B)

Respectfully submitted,

**BENSON WEINTRAUB, Esq.**
1 E. Broward Blvd. #700
Ft Lauderdale, FL. 33301
Tel 954/713-8018
Cell (direct) 954/805-8172
Fax 954/745-5801

By: ______________________
Benson Weintraub,
FL Bar No. 0486418

**CERTIFICATE OF SERVICE**

I CERTIFY that the foregoing was delivered by hand this 22nd day of March 2005 to Jeffrey Kaplan, AUSA 500 E Broward Blvd. 7th FL Ft Lauderdale, FL 33301; Georgann Stanley, USPO 299 E Broward Blvd #409 Ft Lauderdale, FL. 33301

By: ______________________